THE STATE OF MINNESOTA *vs.* MYRON D. HINCKLEY.

REPORTED TO THE SUPREME COURT BY THE JUDGE OF THE DISTRICT
COURT OF RICE COUNTY.

An indictment charged a Defendant with stealing, taking and carrying away certain property, without accusing him of the crime of larceny, or of any other crime, by name. *Held* to be a substantial compliance with *Sec.* 66, *p.* 755, *Stat. of Minnesota*, although it does not conform to the precedents given. The facts constituting the offence must be stated, and the law determines the nature of the offence from the facts.

An indictment charged the Defendant with stealing "divers bank notes amounting in the whole to the sum of five hundred dollars, and of the value of five hundred dollars." *Held* to be insufficient for want of certainty in the description. The property should have been described by the number of bills, their denomination, by what bank issued, that they were genuine, or current, and such other description as to enable the Defendant to prepare his defence, and to protect him against a second indictment for the same offence. An exception to this rule exists in cases where it is impossible for the Grand Jurors to state the description with legal certainty; and in such case the fact that the description is unknown to them, should appear in the indictment.

In case of a demurrer to the whole indictment, and there still remains an offence properly charged, after omitting the objectionable parts, the indictment must be sustained. The prisoner would not have been prejudiced upon a trial under such an indictment, if no proof had been introduced to sustain the allegations which were insufficient.

But where proof was received, under objection, to sustain insufficient allegations in an indictment,—*Held* to be error, and fatal to the verdict. Nor was the error cured by the general verdict, even if evidence had been given to sustain that part of the charge well laid in the indictment; for where improper evidence has been received, which may have a tendency to prejudice a Defendant in a criminal action, a new trial will be granted.

Where a party has been committed to answer for a crime, at a term of the District Court, and he neglects to challenge the panel of the Grand Jury at such term, his confinement in jail will not excuse such neglect; and an indictment found by such Grand Jury will not be set aside on that ground.

Points and authorities on behalf of the State :

*First.*—*Section* 13, *Chapter* 104 *of the Compiled Statutes* is merely declaratory of the Common Law, confers no new right, and entitles Defendant to no privileges which he would not have enjoyed at common law.

The right of challenge to the jury or to any individual member of the grand jury has existed from time immemorial; but its exercise has always been confined as by our Statute, to objections made prior to the finding of the indictment, either by the Defendant, if present, or by any one present as "*Amicus curia.*" *Luckus Case*, 8 *Mass.* 285 ; *Bacon's Abridgement title Juries* "*A*"; *Comm. vs. Luntle*, 9 *Mass.* 107 ; *Comm. vs. Parker*, 2 *Pick.* 563 ; *Hawkins P. C. B.* 2, *Ch.* 25, *Sec.* 26; 1 *Chitty's Cr. Law* 307.

2. This it is believed is the first instance in which the mere non-exercise of this right either from neglect or want of opportunity, has been urged as a ground for disturbing the verdict, and even where valid objections to the grand jury have been raised, courts have uniformly held them to be no ground for arresting judgment, even in cases where the Defendant had no opportunity of interposing his challenge. And while many well considered authorities go to the length of holding that the right is wholly gone if not exercised prior to the finding of the indictment, all the authorities agree that the objections must be specifically urged, if at all, before plea to the merits.

In the case at bar the Defendant interposes no objection whatever to the grand jury, but relies solely upon the purely technical objection that he had no opportunity to exercise the right. For the 1st class of cases, see *Comm. vs. Smith,* 9 *Mass.* 107; *People vs. Jewett,* 3 *Wend.* 314; *State vs. Wolcott,* 21 *Conn.* 271.

For the second class of cases, see *Comm. vs. Parker,* 2 *Pick.* 563; *Haw. P. C. B.* 2, *Ch.* 25, *Sec.* 26; 1 *Chitey Cr. Law* 307. *See also Ch.* 107, *Sec.* 108 *Comp. Stat.*

3. The affidavit of the Defendant is entirely defective as a basis for the motion, in this, that it does not appear that the Defendant was ignorant of the time of the session of the District Court, or that he requested to be informed of the time when the grand jury would be impanelled, or that he requested to be brought before the grand jury, or that he did not have counsel in court, or that he took any steps whatever to avail himself of his right.

4. Many of the technical objections to the grand jury, may be corrected by amendment, and unless it appears affirmatively that the party has been prejudiced by the disqualification of the panel, or an individual juror, and the causes of such disqualification are specifically set forth, courts always refuse to interfere with the verdict. *Amhurst vs. Hadley,* 1 *Pick.* 38 and 40; *Anonymous,* 1 *Pick.* 195; *Comm. vs. Parker,* 2 *Pick.* 562.

5. The authorities cited in support of the principle that a Defendant in a criminal action can waive no rights, have

no application. A party neglecting to challenge grand or petit jurors at the proper time, or neglecting to object to improper evidence, cannot afterwards be permitted to avail himself of the objection. *Comm. vs. Webster,* 5 *Cush.* 295 ; *Selleck vs. S. H. Turnpike Co.* 13 *Conn.* 459 ; *People vs. Jewett,* 3 *Wend.* 314 ; *State vs. Walcott,* 21 *Conn.* 280.

*Second.*—Points on demurrer:

1. The first and second grounds of demurrer are untenable. The indictment in these respects is strictly in accordance with the Statutes. *P.* 756, *Sec.* 76 *Sub.* 1, *and Sec.* 77, *P.* 760 *Comp. Stat.*

2. The third and fourth points cannot be sustained. The addition of Defendant's mystery or profession is an ancient technicality, long since fallen into disuse, and abrogated by Statutes in England and most of the American States, and even when the rule was in force, all objections of this character were regarded as purely technical, and not affecting the merits, and were waived by the plea of not guilty. *State vs. McDowell,* 6 *Black.* (*Ind.*) 49 ; *Wharton's Prec'ts pp.* 7 *and* 8 *note; Comm. vs. Lewis,* 1 *Met.* 151.

In this State the Defendant is required to object to a defect of this character upon arraignment, and a neglect to do so, like a neglect to plead in abatement under the old practice, is a waiver of all objections. *Sec.* 103–4, *P.* 763, *Sec.* 76, *Sub.* 3, *and Sec.* 77, *P.* 760 *and P.* 756 ; *Comp. Stat.* (It is no ground for demurrer) *Sec.* 118, *p.* 765, *Comp. Stat.*

3. The fifth and sixth grounds of demurrer are untenable. The Statute is merely directory. *Sec.* 67, *p.* 755. The indictment strictly follows the most approved common law forms, and is sufficient under our Statutes. *People vs. Enoch,* 13 *Wend.* 159 ; 2 *Arch. Cr. Plea. p.* 354, 16 *title larceny.*

4. The seventh point raised by the demurrer cannot be valid.

Bank notes are made subjects of larceny by Statute, and a description in the words of the Statute is sufficient. They may be described in the same manner as other things which have an intrinsic value, *i. e.* by any discription applicable to them as chattels. 2 *Arch. Cr. Plea. p.* 356, *note* 393, 2 *note; Comm. vs. Richards,* 1 *Mass.* 337 ; *Comm. vs. Williams,* 9

*Met.* 273; *Samuel vs. Cowen*, 12 *Met.* 240; *Davis Cr. Jus. p.* 550, *Form* 6 *and* 7, *p.* 553; *Form* 11, 554; *Form* 13; *People vs. Taylor*, 3 *Denio*, 91; *Haskins vs. People*, 16 *N. Y.* 344.

5. With reference to the eighth ground of demurrer, the indictment is entirely sufficient. The insufficiency of the description as to certain articles has no other effect than to strike them out of the indictment, and the verdict is to be applied to the whole property which is properly and sufficiently charged to be stolen, and for the larceny of such property the punishment is to be awarded. *Comm. vs. Williams*, 2 *Cush.* 582–8; *Haskins vs. People*, 16 *N. Y. R.* 344.

6. With respect to the proof of value, proof of value to the owner is sufficient. 2 *Russ. on Cr.* 124; 3 *Green Ev. Sec.* 153. The request to describe bank notes was proper. *Haskins vs. People*, 16 *N. Y.* (2 *Smith*) 348.

*Third.*—With respect to the verdict.

Where the jury find the Defendant guilty of a lesser offence included in that charged in the indictment, a special verdict should be rendered accordingly. By a general verdict of guilty, they find by the very terms of their verdict, that the prisoner is guilty of all the material allegations in the indictment, and judgment should be rendered for the offence charged. *Comm. vs. Call*, 21 *Pick.* 514; *Comm. vs. Williams*, 2 *Cush.* 582–8; *Josslyn vs. Comm.* 20 *Pick.* 367; *Comm. vs. Hope*, 22 *Pick.* 1.

2. A different rule prevails with respect to a special verdict, for there the jury must specifically set forth in their verdict all the facts necessary to conviction. (*See* 21 *Pick.* 514.) The cases cited by Defendant are all cases of special verdicts rendered under peculiar statutes, substantially requiring the value of the property to be set forth, and the Defendant's counsel relied entirely for authorities to support their position, upon these peculiar statutes. *See* 1 *Scammon* (*Ill.*) *R.* 393; 3 *Gillman* (*Ill. R.*) 53, *cited by Defendant.* But see *Contra Jones vs. State*, 13 *Ala.* 153.

*Fourth.*—The Defendant has not been put in jeopardy. If his position upon the first point is correct, the indictment is bad, being found in derogation of his rights, there has been no legal trial, and the indictment is wholly insufficient to sup-

port a valid judgment. *Comm. vs. Roby*, 12 *Pick.* 496; *State vs. Benham*, 7 *Conn.* 418; 1 *Arch. Cr. Plea.* 114, *note and cases cited.*

2. If the objection to the grand jury be sustained, the court should direct the case to be submitted to another grand jury and should remand it to the District Court for that purpose, as the case will then be in the same position that it would have been in had the court below sustained the objection. *Sec.* 222 *c.* 115, *Comp. Stat.*; *Comp. Stat., Sec.* 112 *to* 115 *inclusive.*

Defendant's points and authorities :

*First.*—This indictment was unauthorized by law, having been found in manifest contravention of the Defendant's legal rights, secured to him by the constitution and declared by public law. *Cons. of Minn., Art.* 1, *Sec.* 7; *Collated Statutes, Ch.* 88, *Sec.* 1; *ibid. Ch.* 104, *Secs.* 13 *and* 20, *inclusive, pp.* 750–1; *and see ibid Ch.* 114, " *Challenging Jurors," Secs.* 1 *and* 38, *inclusive.*

1. The first object here is the *intention* of the legislature, and in ascertaining the legislative intent, reference should be had to the state of the law and practice when the Statute was enacted, and the additional or superior privilege to be conferred on the citizen ; and having arrived at satisfactory conclusions as to the object intended, the courts will then so construe the Statute that its several provisions will best harmonize with that general intent ; so that every word may have a sensible meaning, leaving no useless words, so that no clause will be necessarily repugnant to another clause, so that neither absurdity shall follow, nor injustice, nor even great inconvenience or hardship, nor other unreasonable consequences which the legislature could not be presumed to have contemplated, whereby its beneficial object may be defeated or lost—as to those for whom it was expressly intended. 1 *Bishop Crim. Law* (*2nd Edition*) *Secs.* 64 *and* 66 *inclusive, and notes and cases cited in the notes to section* 66 ; 10 *Pick. Rep.* 235, *Mendon vs. Worcester ;* 20 *Pick.* 267, *Commonwealth vs. Cambridge;* 2 *Cranch* 358, 399, *United States vs. Fisher;* 19 *Pick.* 304, *Commonwealth vs. Slack ;* 4 *McLain's C. C. Rep.* 463,

State of Minnesota *v.* Hinckley.

*United States* vs. *Warner; Dwaris on Statutes,* 2nd *Ed.* 568 and 598 *inclusive;* 15 *Howards* 22, *S. Rep.* 421. *Murray vs. Gibson ;* 2 *Pick.* 487, *Putnam vs Langley*; 7 *Mass. Rep.* 306, *Agess vs. Knox.*

2. Tested by the foregoing rules of construction, and referring to the state of the law and practice, in this respect, at the time of these statutory enactments, involved as the same was, in a conflict of authorities, it is apparent that the *intention* of the legislature was to recognize and declare the equal right of the citizen to a fair, impartial and duly organized *Grand Jury,* by whom alone he can be lawfully *accused,* as well as to a fair, impartial and properly organized *Trial Jury,* by whom alone he should be tried on such accusation ; and to secure that *right,* to declare by positive public law that "*any person held to answer a charge for a public offence*" shall have an opportunity to challenge the *Grand Jury* or any individual *Grand Juror,* and at the same time to define the several causes of challenge—the time and manner of interposing the objections, and of determining their validity and the effect of the same.

3. This Defendant, ignorant of the *time* when the grand jury would be charged and would retire, was by *incarceration in the State jail,* distant from the court room, " held *to answer* a charge for a public offence," the same offence charged in the indictment, whereof the court and prosecuting officer had been well advised by the Sheriff, who, as keeper of the State jail, had duly returned a calendar of the prisoners in his custody, including the name of this Defendant, with the date of his commitment, and for what offence.    The Defendant should have been brought into court at the proper time in charge of an officer by order of the Judge, on, or without the suggestion of the Prosecuting Attorney, and then notified of his rights and offered an opportunity for the exercise of the same.   After being deprived of such opportunity and this right, it was clearly wrong to bring up the Defendant into court, and there compel him to answer over to an indictment already found against him by a Grand Jury and Grand jurors, liable for aught that appears, to have been successfully challenged.

This was an infraction of Defendant's legal rights, and a

practical denial of justice.  9 *Mass. Rep.* 107, *Commonwealth vs. Smith;* 2 *Hawkins P. C. B.*2 *Ch.* 25 *and* 28; 1 *Chitty Crim. Law* 307, *and notes;* 5 *Mass. Rep.* 90, *Commonwealth vs. Ryan;* 2 *Wendell Rep.* 314, *The People vs. Jewett;* 8 *Mass. Rep.* 285, *The Case of John Tucker;* 2 *Pick. Rep.* 549, *Commonwealth vs. Parker et al;* 10 *Pick. Rep.* 477, *Commonwealth vs. Knapp; Collated Statutes, Ch.* 119, *Secs.* 10, 11, *p.* 789 ; 21 *Conn.* 272, *State vs. Wolcott* 2 *Chandler* 172.

4. In criminal cases, the Defendant is not to be presumed to have waived any of his legal rights, and must therefore expressly and in unequivocal terms have relinquished his rights, before he shall be adjudged to waive or abandon the same. 3 *Mass. Rep.* 126, *Commonwealth vs. Andrews ;* 2 *Metcalf Rep.* 18, *Commonwealth vs. Dota;* 5 *Pick. Rep.* 429, *Commonwealth vs. Briggs.*

5. Waiving no rights, the Defendant protested against these oppressive proceedings at the earliest practicable moment by interposing this motion, which should have been granted, and the indictment set aside and quashed as unauthorized by law, being found and returned in contravention of statutory provisions of public law, and the Defendant ordered to go forever acquit thereof.  *Cons. of Minn. Art.* 1, *Sec.* 7.

*Second.*—The Defendant has been compelled to answer over to the indictment, and been once tried, and though that were in law a mistrial, he should not again be subjected to the hardship and costs of a second trial, nor can he be "*put twice in jeopardy*" for the same alleged offence ; and the order of this court therefore should be such as to secure to him a final discharge from the prosecution, and a release from his imprisonment.   Any statutory provision or rule of practice tending to a contrary result would be "repugnant to the constitution," and therefore void.  *Const. of Minn., Art.* 1, *Sec.* 7 ; 2 *Hale* 241 ; 2 *Hawke* 35, *Sec.* 1 ; *Schedule S.* 2*nd in connection* ; 12 *Pick.* 502, *Commonwealth vs. Raley;* 18 *John. Rep.* 201, *People vs. Godwin;* 2 *Sumner's U. S. C. Rep.* 42 ; *U. States vs. Gilbert, pr. Justice Story; and* 7 *Conn. Rep.* 418, *State vs. Benham, and the closing portions of the opinions of the court in The People vs. Caryl;* 12 *Wendell Rep.* 548.

This disposes of the Judge's Report.

Appellant's points and authorities on the Exceptions :

*First.*—The demurrer should have been sustained, the indictment being bad and insufficient in law.

1 & 2. As to the first and second points presented by the demurrer, it may be necessary only to observe that there is no such court known to the Constitution and laws of this State, as "The District Court for the County of Rice ;" the term of the court is not stated, nor is it alleged that the Grand Jury were from that or any other particular county, or that they found their indictment in that court and county, nor does it appear that the indictment was returned to, received and filed by its clerk in the District Court of the State of Minnesota Fifth Judicial District at a regular term begun and holden at Faribault, in the County of Rice on the first Monday in April, 1860. *See Collated Statutes, Ch.* 105, *Sec.* 64, *p.* 755.

3 & 4. The third and fourth points are well taken.

At common law, it always was, and still is necessary to state, not only the name of the Defendant when known, as here, but his proper additions of business, or calling and place of residence ; and this rule of the common law obtains in all the States where it has not been superseded by Statute. In England the rule has been changed by a statute of the present Queen, and in the State of Massachusetts the same thing has been done by statutes, while our own Constitution and Statutes have not abrogated the ancient rule. 1 *Archibald Cr. Plead. p.* 78, *and notes and cases cited in notes;* 1 *Wharton's Prect. of Indictments, p.* 7, *and notes; Davis Criminal Practice, pp.* 18 *and* 597 ; 1 *Metcalf's Rep.* 151, *Commonwealth vs. Lewis;* 15 *Maine Rep.* 122, *State vs. Bishop;* 1 *Wharton's Precedents* 7, *note E.*

5 & 6. The fifth and sixth points taken are fatal to the indictment. When the Grand Jury believe a person is *probably* guilty, they should proceed by presentment only. This may have been the view taken by them in this case, but when the evidence is so strong that they believe him to be guilty, they shall find an indictment *accusing him* of and charging him with that crime. *Collated Statutes, Ch.* 104, *Secs.* 29, 30, 31, 32, 33, 54, 55 *and* 56, *Ch.* 106, *Sec.* 1, *p.* 762, *Ch.* 105. *Sec.* 1 *and* 4 *inclusive, p.* 751 *and* 759 ; 2 *Bouvier's Law Diction-*

*ary, p.* 289, *and authorities there cited.*   And as neither course has been adopted either in form or substance, the precept is manifestly bad and insufficient as an indictment.

7. The seventh point is clearly with the Defendant.

A. It has come to be an *axiom* in the science of criminal pleading, that everything necessary to be proved to establish the offence and the guilt of the accused must be first well pleaded in the indictment, before the same can be rightfully so proved ; and that to be well pleaded, such facts, each and all, must severally be so laid in the indictment that when proved, link by link, they shall constitute the complete chain of evidence ; and *this* to the end, that the accused may be able to prepare and make his defence, that the Judge, when the evidence comes to be offered, may at once see whether the same be admissible and proper ; that the jury may determine the more understandingly whether the evidence establishes the facts as laid in the indictment, and finally that the record of the judgment, when rendered, shall be the protection of the accused against a second prosecution for the same offence.

B. Thus in larceny the indictment should describe the several species of property, with the value of each and all, with reasonable certainty of identity ; and hence when a "Bank Note" is the subject of the supposed larceny, it should be laid in the indictment by its distinctive denomination, by what incorporated bank, in the State issued, that the same is genuine, and its value ; or if it be a "Bank Note" of a foreign bank, then it should be described by its known denomination, and as purporting to have been issued by such a bank in such a State or county, current within this State by the laws and usages thereof, and its value.   To this rule there is one exception or qualification which obtains only, when the prosecutor and witnesses are unable to ascertain the denominations, the "Bank note" not having been reclaimed, and so alleged to be *unknown* to the Jury.

While it is conceded that as to this last proposition, there is great looseness, and some conflict in the reported cases, we claim that the rule we contend for is best supported both on principle and authority.   21 *Boston Law Reporter* 27, *Commonwealth vs. Grimes ; S. J. Court, Mass.* 1858 ; 3 *Denio*

*Rep.* 91, *People vs. Taylor, and authorities cited;* 16 *N. Y. Rep.* 344, *Haskins vs. The People; Parker's Crim. Law;* 2 *Archibalds C. P. p.* 393–1–2 *and notes ;* 4 *Denio Rep.* 364, *Johnson vs. The People, instructive case ; Wharton's Precedents of Indictments,* note *A. p.* 190, *and text forms and notes on pages* 196–7 *inclusive; Collated Statutes Ch.* 133, *Secs.* 1 *to* 3 *inclusive, p.* 855.

C. Here it is not alleged that the distinctive denominations of the "*divers*" bank "*notes*" were to the Jurors unknown, while the case finds in fact that they had all been reclaimed and so well known to the prosecutor in all the details of necessary descriptions.

This is fatal.

8. The eighth point is well interposed by the demurrer.

Tested by the foregoing rules of pleading, this description of the coin as "*divers other pieces" of gold coin current, within this State by the laws and usages thereof, and of the aggregate value of four hundred and eighty-three dollars, is bad for uncertainty. In the State vs. Murphy,* 6 *Ala. Rep.* 845, *it is decided that "in an indictment for larceny charging sundry pieces of silver coin made current by law, usage and custom, etc., amounting to the sum of* $530 15, *description of the money is insufficient for uncertainty, and that the number and denomination of the coin should be stated." See* 2 *Arch. Cr. Pleadings, p.* 393, *and note.*

9 & 10. These objections look to the indictment as a whole, and of course include the previous points now considered, and the object of these last is mainly to show that those defects have not been cured by any proper subsequent averment, with this additional suggestion that though some intermediate portions of the indictment standing alone might or might not be sufficient, it could not relieve the difficulty here, for where the indictment contains, as this does, but one count, charging one offence only, if any of the constituent portions of the same are materially deficient, then the indictment being bad in part is bad in toto, and should not be upheld.

Here we rest the demurrer.

*Third.*—The Judge below erred in the admission of evidence at the trial.

1. It is proper and indeed indispensably necessary to prove *the description of the property*, but before that evidence can be received, the description must have first been well pleaded in the indictment; and, that not done, hence the validity of that objection presented by the demurrer, and hence too, the manifest impropriety in allowing the Attorney's question to the prosecutor and his witness—"*describe, if you can, any of the bank notes that were stolen from the safe?*

2. And the evidence elicited from a wrong question was itself equally wrong, as well as quite insufficient for the purpose for which it was intended, for the witness " described a portion of the bank bills by their denomination, and that they purported to be bills on banks in the "States of Missouri, Illinois and Wisconsin." Hence all this should first have been laid in the indictment, with suitable averments that the same *were genuine* bank notes, or current *as such in this State*, and the value, or other similar averments. *Johnson vs. The People*, 4 *Denio R.* 364, *before cited;* 12 *Wendell Rep.*, People *vs. Caryl*, *p.* 547.

On the last point no evidence was given " except that the same was *worth* the sum of $500 to Wm. H. Dike & Co." Counterfeit bank notes have in legal contemplation no value, and so not the subject of larceny, and yet they may be "*worth*" to the counterfeiter and his confederates dealing in his *ware* the amount they represent, because *they* may know where the same can be disposed of to other parties. And here for aught that appears in the indictment or evidence, or both, these bank notes may have been spurious—valueless in law—and not the subject of larceny.

4. It is too well known to be now questioned, or to justify the extensive citation of authorities, that property—bank notes or coin—to be the subject of larceny, whether at Common Law or under the Statutes, must have a *legal value* in law and in fact; and the same must be well alleged in the indictment, and clearly proved at the trial. 2 *Bishop Crim. Law, Sec.* 694; *Wharton's Indict. Note (B)*, *p.* 191; 1 *Minn. Rep.* 293, *U. S. vs. Gibeon ;* 9 *Abbott Pr. Rep.* 16, *Kolle vs. The People, Sup. Ct. N. Y.* 1859.

5. On the same general ground that the number, denomina-

tion and separate value of the " divers other pieces of gold coin," has not been laid in the indictment, it was error to receive evidence thereof at the trial.

*Fourth.*—The verdict is bad and insufficient in law to authorize and justify judgment and sentence thereon.

1. The verdict must be so found that it shall be seen of record, that every material element constituent to the offence and determinative of its legal character and degree has been found by the jury.

" In order to enable the court to order the proper judgment and pronounce the right sentence; and *this* must expressly appear by the verdict itself, for it is not competent for the court to supply any defects in the verdict by intendment or implication." 17 *Howard Pr. Rep.* 316, *O'Larey vs. The People*; 9 *Abbott Pr. Rep.* (*Digest*) 481–2, *and cases there referred to; Collated Statutes, Ch.* 99, *Sec.* 14, 15, 16.

2. In a prosecution for larceny it is necessary, *first*, to allege the value of the property with proper averments in the indictment; *second*, to prove clearly at the trial the value as so laid; and *third*, that a verdict of guilty should also state the value of the property, or so much thereof, as were stolen, which was then alleged, proved, and found by the jury.

The verdict is incomplete and defective in not finding the value of the property, and should have been set aside on Defendant's motion as clearly bad. 1 *Scammon's Ill. Rep.* 392, *Highland vs. The People*; 3 *Gilman's Ill. Rep.* 53, *Sawyers vs. The People*; 1 *Green (Iowa) Rep.* 316, —— *vs. State; see, also,* 2 *Archibald's Cr. Pl.* 361–2, *last of note* (1) *at bottom page.*

GORDON E. COLE, Attorney General, and T. S. BUCKHAM, Counsel for State.

G. W. BATCHELDER and H. C. LOWELL, Counsel for the Defendant.

*By the Court.*—ATWATER, J. The Defendant was indicted for larceny in the District Court for Rice County, and a verdict of guilty was rendered. The case was reported to this

court by the Judge before whom the cause was tried, in accordance with the provisions of *Sec.* 220, *p.* 778, *Comp. Stat.* The record also presents the demurrer to the indictment and certain exceptions to the evidence introduced by the prosecution on the trial of the case.

That part of the indictment necessary to present the points raised, reads as follows, viz: " The grand jurors for the County of Rice, and State of Minnesota, upon their oaths, present that Myron D. Hinckley, on the morning of the 13th of October, A. D. 1859, with force and arms, at the town of Faribault, in the County of Rice and State of Minnesota, feloniously did steal, &c., &c., *divers bank notes, amounting in the whole to the sum of five hundred dollars, and of the value of five hundred dollars.*" The indictment then goes on to allege the taking a certain quantity of coin, the denominations and value of which are specifically stated, and then avers, " and divers other pieces of gold coin current within this *State by the laws and usages thereof, and of the aggregate value of four hundred and eighty-three dollars,* feloniously did steal, take, carry away," &c.

One of the points specified in the demurrer to this indictment is, " that it is not therein alleged that this Defendant is accused by the Grand Jury, of the County of Rice, by this indictment of the crime of larceny, or of any other crime."

The Statute provides *Comp. Stat. Sec.* 66, *p.* 755,) that the indictment must contain, " 1st, the title of an action, specifying the name of the court to which the indictment is presented, and the name of the parties ; and, 2d, a statement of the acts constituting the offence, in ordinary and concise language without repetition, and in such a manner as to enable a person of common understanding to know what is intended." It then goes on to state, that the indictment may be substantially in the form, of which examples are given ; the commencement of the body of an indictment being, " A. B. is *accused* by the Grand Jury of the County of ———, by this *indictment* of the crime of," &c.

It will be observed that the second clause above quoted, prescibing the requisites of an indictment, is precisely like that prescribing the requisites of a complaint in a civil action.

45

This fact, considered with the forms of the indictment given in the Statute, conclusively shows, that it was the intention of the Legislature to simplify the pleadings in criminal, as well as civil actions, and do away with the technicalities and repetitions which had obtained, and been more or less held necessary, under the former practice. When a question arises as to the sufficiency of an indictment, the test to be applied is, whether it substantially conforms to the provisions of Section 66, of the Statute above quoted, and not whether it conforms to the precedents given in the subsequent section.

This indictment in the commencement of the body of the same, is not in accordance with the form given in the Statute, and in departing from the form there given, the pleader has not improved upon the language of the precedent. But we think the indictment substantially complies with the requirements of Section 66. The word "present," which has been used in this indictment, is the usual and appropriate word, employed in a presentment, as defined in *Sec.* 33, of *Chapter* 104, *p.* 752 *Comp. Stat.* But among the definitions given to this word are, "to lay before a public body for consideration, as before a legislature, a court of judicature, a corporation," &c.; "to indict;" "to give notice officially of a crime or offence." The language used, therefore, is, in substance, that the Grand Jury, upon their oaths, do state, or lay before the court the facts following, &c. Then the indictment must state facts sufficient to constitute an offence, and if it does so, and in the manner required, the Statute is complied with. This indictment goes on to state, that the Defendant, at the time and place mentioned, "feloniously did steal, take and carry away," &c., the personal property mentioned and described in the indictment. Here the offence is plainly set forth, and the omission of the pleading to term it a "crime," or to "accuse" the party of "committing the crime," in express words, cannot change the legal effect of the fact pleaded. The *facts* constituting the offence must be stated, and from those facts the law determines its nature, which cannot be affected by any term or appellation, which the Grand Jury may apply, or fail to apply to it. The indictment is also in compliance in this respect, with *Sub.* 6, *of Sec.* 76,

*p.* 760, *of Comp. Stat, and Sec.* 77, *of same page.* The objection must, therefore, be held untenable.

Another objection raised by the demurrer to the indictment is, that " the said *divers bank notes, amounting in the whole to the sum of five hundred dollars,* are not described with sufficient certainty by their several denominations and number, and when and where issued, and by what bank, and by what authority, and that the same were current within this State, and of value within this State." The objection is also raised, that the description of a part of the gold coin mentioned in the indictment, is uncertain and insufficient.

At common law, the stealing of bank notes, and choses in action, was not larceny. By *Sec.* 12, *p.* 710, *Comp. Stat.* the stealing any bank note, bond, promissory note, &c., is made larceny. This Statute, however, only enlarges the class of property, which may become the subject of larceny, and in no way affected the existing rule, as to the certainty and sufficiency of the description of the property alleged to have been stolen.

The rule as to the certainty required in an indictment, is thus laid down in *Archibald's Crim. Pr. and Pl. Vol.* 1, *p.* 88, viz : " that where the definition of an offence, whether by a rule of the common law or by Statute, includes generic terms, (as it necessarily must,) it is not sufficient that the indictment should charge the offence in the same generic terms as in the definition, but it must state the species—it must descend to particulars." The objects for which this particularity is required are stated in the notes to the text above quoted. And in note (1) on page 89, the author says : "It is frequently necessary, in the description of an offence, to state the quantity, number, kind and value of the personal property which is essential to the constitution of the offence, or necessary to the right understanding of the indictment. In this statement, certainty, to a common intent, as it is technically termed, is generally sufficient, which seems to mean such certainty, as will enable the jury to decide in case of theft, whether the chattel proved to have been stolen, is the very same with that upon which the indictment is founded, and show judically to the court that it could have been the subject matter of the

offence charged, and thus secure the Defendant from any sub-sequent proceedings for the same cause, after a conviction or acquittal." To the same effect are *Whar. Am. Crim. Law*, *p*. 116, *et. seq.; Bur. Crim. Law, p.* 318; 1 *Chit. Crim. Law*, *2d Ed.* 229, 230. The rule, therefore, laid down by Mr. Archibald may be regarded as sound and well established, and has been adhered to with more or less fidelity by all courts whose decisions are worthy of consideration.

Tested by the above rules, is the allegation in the indict-ment with reference to the bank bills sufficiently certain? I think not. In this case the number of the bills stolen, is not stated, nor their denomination, nor the bank by which issued, nor that they were genuine, or current. No description what-ever is given of a large amount of personal property alleged to have been stolen, and of a nature so easily described. None of the objects for which certainty in a pleading are re-quired are answered by such an informal allegation. Under such a statement, it would be quite possible that the Defend-ant might be put upon his trial for a different offence than the one found in the bill, nor is he put in possession of sufficient facts, to enable him to prepare for his defence; nor is it easy to see how a conviction or acquittal on such a charge could be a protection to a subsequent indictment for the same offence. For if the allegation be sufficient, the proof need go no further than to sustain it, and neither pleading or proof would show any thing to sustain a plea of *autrefois acquit*. Even in a complaint in trespass, such a description would be bad. In *Playter's case*, 5 *Co*. 35, a declaration in trespass *qu. cl. fregit*, *et pisces suos cepit*, was held bad, because the number and kind of fish were not stated. This was held to be matter of substance. To the same effect are 1 *Ventr.* 272 *and* 329; 1 *East.* 583; 4 *Burr.* 2455; 1 *Star.* 673. In the last case (*Wiatt vs. Essington,*) the reason assigned is, that a recovery would be no bar to another action for the same goods, " and this," says the court in 2 *Pick.* 143, "seems to be quite a good reason."

Referring to the authorities, I have been able to find none which sustain an allegation in an indictment, as defective in certainty as the one under consideration, and but one case,

which even implies that such pleading could be held sufficient. That is the case of *Larned vs. Commonwealth*, 12 *Met.* 240, in which an indictment is set forth, containing an allegation, almost the same as that under consideration.   But the court expressly states, that it is not called upon to decide whether such an allegation is sufficient, though at the same time stating in substance, that it is not satisfied that the pleading would not be sufficient.   The case of 9 *Met.* 273, also cited by the counsel for the prosecution, does not raise the point.   And the case of *Haskins vs. The People*, 16 *N. Y.* 344 is one in which the allegation is entirely different from the one under consideration, the statement being, "bank bills of banks *to the jurors unknown, and of a number and denomination to the jurors unknown*, of the value of six hundred dollars," etc.   Among the English reported cases, that which comes nearest to supporting the position of the counsel for the State, is cited in *Arch. Crim. Pl.*, *Vol.* 2, *note on p.* 355, in which the indictment charged the prisoner with embezzling "divers, to wit: *nine* bank notes for the payment of divers sums of money," etc.   The indictment was held sufficient, Lord Ellenborough, saying, that "the indictment in question had set forth the *number*, value and species, etc.

On the contrary, there are numerous authorities which hold that such an allegation as this in the indictment, is too uncertain and insufficient.   In addition to those above cited, see *Stewart vs. Commonwealth*, 4 *Serg. & R.* 194; *State vs. Dowell*, 3 *Gill & John.* 310; *Commonwealth vs. Boyer*, 1 *Binn.* 201; *Commonwealth vs. Maxwell*, 2 *Pick.* 143; 2 *Hale* 182; *The People vs. Jackson*, 8 *Bar.* 637; *People vs. Taylor*, 3d *Denio*, 91; *Johnson vs. The People*, 4 *Denio* 364; *The People vs. Caryl*, 12 *Wen.* 547; *State vs. Murphy*, 6 *Ala.* 845; *Salisbury vs. State*, 6 *Conn.* 101; 13 *John.* 90; *Lambert vs. The People*, 9 *Cow.* 578.   In those of the above cases where indictments have been sustained, the allegations complained of have been more certain and definite, than those in the case at bar.

It is not denied, but that the certainty required by the authorities, may be dispensed with in one case, which forms an exception to the rule, and which is allowed from the necessity of the case only, and in no respect militates against the prin-

ciple above stated. That case is, when it is impossible for the jurors to state the facts with legal certainty, and when that fact appears in the indictment. This is held as a sufficient excuse for the omission of the proper averments, and is allowed in order to prevent an entire failure of justice. 3 *Denio* 91; 16 *N. Y.* 347. In this case there is no allegation that a more particular description of the bills was unknown to the jurors; and indeed, it is not probable that such an allegation could have been truthfully made, as it appears from the case that the bills and coin had been reclaimed. Hence, there would seem to be no excuse for the omission more specifically to describe them. In the foregoing remarks, reference has been more particularly made to the allegation in the indictment concerning bank bills, but they apply for the most part, with equal force to that part of the indictment above quoted as to " divers pieces of coin."

But although the allegations in regard to the bank bills and a part of the coin, were insufficient, yet the demurrer was properly overruled by the court. For the demurrer goes to the whole indictment, and if, omitting the objectionable parts, there still remains an offence properly charged, the indictment must be sustained. (*Comp. Stat. Sec.* 118, *p.* 765 ; 3 *Denio* 91; 3 *Wen,* 229.) In this indictment there is alleged the taking of a considerable quantity of coin, which is properly and sufficiently described. Those allegations which were insufficient, might have been regarded as surplusage, and the Defendant tried upon the others. The prisoner would not have been prejudiced in such trial, by those parts of the indictment objected to, if no proof had been introduced to sustain them.

Upon the trial of the cause, the prosecuting Attorney requested his witnesses " to describe if you can any of the bank notes that were stolen from the safe ?" And the same testimony was also sought in reference to the coin, the description of which was objected to. To this evidence the counsel for the Defendant objected, but the court overruled the objection and received the evidence. This ruling was clearly erroneous and fatal to the verdict. Those allegations in the indictment being insufficient and uncertain, no proof could properly be received to sustain them. Nor is the error cured by the gen-

State of Minnesota *v.* Hinckley.

.eral verdict of guilty, for the only evidence which was received so far as the case shows, was that received under these defective allegations. And even had it appeared, that evidence was introduced to sustain that part of the charge well laid in the indictment, it would be impossible 'for the court to say, whether the jury would have found their verdict upon that alone, without also considering the improper evidence. Where improper evidence has been received, and it may have a tendency to prejudice a party, especially in a criminal case, a new trial should be granted. The case of *Haskins vs. The People*, 16 *N. Y.* 344, cited by the counsel for the prosecution, does not sustain the admission of the evidence here objected to. In that case the indictment states, that the " number and denomination of the bills, etc., were to the jurors unknown," and under such an allegation, proof may be introduced describing them. It further appeared in that case that there was positive testimony sufficient to have convicted the Defendant, upon the bills specifically described in the indictment. Upon this ground therefore, the Defendant is entitled to a new trial.

Previous to the finding of this indictment, the Defendant had been arrested on the same charge, and committed to the jail of Rice county. A motion was made in the court below on his behalf, to set aside the indictment, on the ground that " he was not permitted to challenge the panel of the Grand Jury, or any individual Grand Juror, before they retired, by reason of being in confinement, and that he had reason to believe and did believe, that good and sufficient causes and legal objections existed against the individual Grand Jurors, and against the panel which the court would have allowed under the Defendant's challenge," etc. The Defendant further claimed that he did not know when said Grand Jury were impanelled, sworn and charged by the court.

This motion was properly overruled by the court. The terms of the District Court, and the impanelling of Grand Juries, are matters fixed by law, and the Defendant cannot plead ignorance of the law, to relieve himself from any prejudice his rights may have sustained by reason thereof. The Defendant entirely fails to make a case for the interposition of the court in his behalf. He certainly knew that he had been com-

mitted to answer for the crime of larceny at the next term of the District Court of Rice County. He does not show that he even made any inquiry as to when the term was to be held, or that he was misled in regard thereto, or that he made any request of the court, or officer having him in charge, to appear in court, either in person or by counsel, to interpose a challenge, or that any cause of challenge did actually exist, or that he was ever informed that cause existed. We think no authority entitled to consideration can be shown for dismissing an indictment on such grounds as are here presented. The views of the court on this point are further stated in *The State vs. Maher*, decided at the December Term, 1859, 3 *Minn.* 444, and it is deemed unnecessary further to discuss it.

The verdict below is set aside, and a new trial granted.