State of Minnesota v. Beebe.

## STATE OF MINNESOTA

*vs.*

## EZRA BEEBE.

The affidavit of one of the grand jury by whom an indictment was found, is not admissible to prove that there was no legal evidence before the grand jury upon which it was found, nor that there was illegal evidence used by the grand jury, nor that the names of certain witnesses were indorsed on the indictment, who were not sworn or examined by or before the grand jury during the examination or consideration of the charge set forth in the indictment.

On the 20th of October, the grand jury found an indictment against H., for the same transaction, in respect of which the defendant was indicted by them on the 1st of November. Two witnesses, whose names were indorsed on the indictment against defendant, made oath that they were sworn and examined before the grand jury in the case of the State vs. H., and that they were not sworn or examined in this case, or any other except that of H.; and that they were not before the grand jury on the 1st of November. *Held*, that no foundation would be thereby laid for charging the grand jury with a false indorsement, nor till it was shown that the witnesses were not examined as to the transaction in respect to which the defendant was accused.

. Where an indictment appears to have been found by the grand jury, and properly filed, it is to be presumed that it was presented to the court as prescribed by Gen. Stat. ch. 108, sec. 60.

Under Gen. Stat. ch. 91, sec. 10, one, who at common law would be an accessory before the fact to the offense of larceny, may be charged directly with the commission of the principal offense, or the indictment may charge him as principal, by setting out the facts which at common law would constitute him such accessory only.

Evidence of a larceny of $2,735, in $5, $10, and $20 bills, national bank bills and United States bills, legal tender, is competent evidence to support an indictment which charges a larceny of "genuine U. S. legal tender notes;

VOL. XVII.—30

State of Minnesota v. Beebe.

genuine national bank bills, current as money." Evidence of acts and declarations, in the course of the transaction, of those who actually stole the money, held admissible against the defendant, there being evidence in the case tending to show a conspiracy, between him and them, to steal it.

It is not error for the court in its discretion, to allow one of the counsel for the prosecution to "first sum up the cause, notwithstanding the defendant claimed the right to first sum up."

There was evidence tending to show that the defendant brought his confederates part way on the road to W., the place where the larceny was committed. His request that the jury be instructed, that if they find that the intention and plan of said confederates to take the money at W., was not formed until they separated from defendant, they must acquit, was properly refused, as requiring the jury, taken literally, to acquit the defendant, if his confederates, although intending to steal the money, did not fix on the way in which to carry out that intention, till after the defendant had left them.

The court also properly refused to instruct the jury, that "even if they found that the defendant had counselled, hired, or otherwise procured the commission of some offense in Minnesota, unless the jury find that he counselled, hired, or procured the commission of this particular offense charged, they must acquit the defendant," since, though innocent of "hiring, counselling, or procuring," he might have aided and abetted in the commission of the offense; the court in the general charge, stating the law in a way not open to such an objection.

A request to instruct the jury, "that if the party is charged with a crime which is endeavored to be fastened upon him by circumstantial evidence, or by witnesses of doubtful credit, proof of defendant's good character for honesty and integrity, is proper to rebut any presumption of guilt arising from such evidence," was properly refused, as the testimony of such witnesses might be direct and positive to the commission of the offense by the defendant, and therefore, if believed, would not raise a presumption of his guilt, but prove it directly.

Such instruction might, also, be open to misconstruction in another way, inasmuch as evidence of good character, does not, *per se*, rebut the presumption of guilt arising from circumstances, but is evidence proper to be considered by the jury, the effect of which as to whether it does in fact rebut such presumption or not, is for them to determine.

The defendant was convicted of the crime of larceny in the district court for Waseca county. He removes the cause

to this court by appeal.    The case is fully stated in the    .
opinion of the court.

LEWIS BROWNELL, for Appellant.

F. R. E. CORNELL, Attorney General.

*By the Court.*—RIPLEY, CH. J.—The defendant was indicted
with others for larceny in the district court for Waseca county.
Upon being arraigned, he moved to set the indictment aside,
because it was not found, indorsed or presented as prescribed
by the law relating to grand juries, in this :—that there was
no legal evidence before the grand jury upon which the in-
dictment was found; that there was illegal evidence used by
the grand jury ; that the names of certain witnesses were in-
dorsed on the indictment, who were not sworn or examined
by or before said grand jury during the examination or con-
sideration of said charges, as set forth in said indictment.

In support of said motion the defendant offered the affida-
vit of Neri Reed, one of said grand jurors, but the court re-
fused to receive it, on the ground that public policy did not
allow a grand juror's affidavit to be used on such motion.

In this the court was right.   The law, Gen. Stat. ch. 107, sec.
33, provides that the grand jury can receive none but legal
evidence, and ch. 108, sec. 59, that where an indictment is
found, the names of the witnesses examined shall be inserted
at the foot, or indorsed on the back thereof, before it is pre-
sented to the court.

The affidavit went directly to impeach the conduct of the
grand jury, in finding an indictment on illegal evidence, and
making such false indorsement, and was most clearly within
the rule, that the affidavit of a grand juror will not be received
to impeach, or affect the finding of his fellows.   *Wharton's*

*Amer. Cr. Law, p.* 130; *R. vs. Marsh, 6 Add. & Ellis, p.* 236; *Bish. Crim. Pr. s.* 729, *n.* 4.

The defendant read in support of said motion the affidavits of two of the witnesses, whose names were thus indorsed, that they were sworn and examined before said grand jury in the case of the State vs. John T. Howard, and that they were not sworn or examined as witnesses in this case, or any other, except that of Howard; and that they were not before the grand jury on the 1st of November, 1870; also, from the minutes of the grand jury on file in said court, that an indictment against defendant was found on said 1st of November. It also appeared from the record, that on the 4th day of said term, Oct. 20th, the grand jury came into court, and presented an indictment against said John T. Howard. This indictment is for the same transaction, as that in respect to which the defendant was indicted, viz.: the breaking open the safe of the Waseca bank, and stealing its contents.

On these affidavits, then, it would appear, that these witnesses had been examined, and testified as to their knowledge respecting the subject matter of this indictment, and that thereon an indictment against said Howard was found on the 20th of October. If it should appear to the grand jury, upon further consideration of such testimony, that the defendant ought also to be indicted, it would certainly be their duty to indict him, and it is not perceived why, in that event, it would not be their duty to indorse the names of such witnesses on the indictment.

It would seem, indeed, that it would be but an evasion of the statute not to do so, for the reason that they were not examined while the grand jury had the defendant's case specially and particularly before them.

Under the circumstances, the defendant would not lay the foundation for charging the grand jury with a false indorse-

State of Minnesota v. Beebe.

ment, till he should show that the witnesses were not examined as to the transaction in respect to which, the defendant was accused of having been *particeps criminis.*

Upon said motion, it further appeared, that, except the said indictment, endorsed, "a true bill, Jo. Chandler, Foreman Grand Jury. Filed November 1st, 1870. S. J. Wells, Clerk," and the said minutes of said grand jury, there was no record respecting the same.

The objection is, that whereas Gen. Stat. ch. 108, sec. 60 provides, that when an indictment is found, it shall be immediately presented by the foreman, in the presence of the grand jury, to the court; filed with the Clerk, and remain in his office as a public record; it must appear of record that it was so presented.

As it appears that an indictment against defendant was found November 1st, and this indictment appears to have been filed on that day, unless the ordinary presumption in favor of the proceedings of courts is inapplicable here, it would be presumed that it was duly presented; and we see no reason why this is an exception to the ordinary rule.

At common law, indeed, there would be no room for such presumption. The record must show that the indictment was found. It cannot be intended that the defendant was indicted. It must appear by the record of the finding.

The reason, we think, is, that at common law, the grand jury having found one or more bills, come into court and hand them to the clerk, who thereupon publicly calls the same over to them, viz.: "Against A. B. (for felony or misdemeanor) you find a true bill, against C. D., &c.," asking them, at the same time, if they agree that the court may amend matter of form, to which they signify their assent.

This was necessary in order to enable the court to correct any clerical mistake, because it has no authority to change the

form of the accusation, without the consent of the accuser. The clerk thereupon records the finding. 1 *Archbold Cr. Pr. & Pl. p.* 99, *n.* 1.

Our statutes, however, have obviated the necessity of the form above mentioned, by providing, that no indictment is insufficient by reason of a defect in matter of form. *Gen. Stat. ch.* 108, *sec.* 11; and the facts, that it is indorsed, " a true bill," signed by the foreman, and properly filed, are evidence that it has been *found* by the grand jury. *State vs. McCarty, Jany. T.* 1871. *Gen Stat. ch.* 107, *sec.* 57.

The statute also makes it a misdemeanor for any judge, grand juror, clerk, county attorney, sheriff or other officer to disclose the fact that an indictment has been found. Ch. 107, Sec. 49. As a consequence, and in furtherance of this policy of our law, by the practice in our district courts, the clerk receives the indictment from the grand jury and files it in silence, allowing no one to inspect it, but the judge and county attorney; nor, so far as we are advised of the practice, is it his custom, if the defendant has not been arrested, to make any note respecting it in the minutes. At any rate, such an entry in a public record in constant use during term, might render secrecy practically impossible, and the policy of the law would seem to authorize its omission, though the record of the case, when finally made up, should show, of course, that the indictment was duly presented, &c.

When, therefore, the record of the proceedings of the term at which the indictment was found, does not show that it was presented in court, as provided by law, we think it should be presumed that the law in that respect was complied with, if, as in this case, the indictment appears to have been found, and properly filed. The motion to set the indictment aside was properly denied.

At the trial the prosecution stated and admitted, that they

did not charge, or claim, that the defendant committed the offence charged by being present when the property was actually stolen, and of actually stealing it in person, but only claimed, that he was guilty of the said offense, as accessory before the fact.

The defendant thereupon objected to the proof of facts going to prove the defendant an accessory before the fact, because not so alleged in the indictment.

As already stated, the indictment charges him with larceny in common form. By Gen. Stat. ch. 91, sec. 3, an accessory before the fact shall be punished in the same manner as is prescribed for the principal, and by sec. 10, the distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall be indicted, tried and punished, as principals.

In treason and misdemeanors there is no distinction between principals and accessories; all concerned in the commission of the offense are deemed principals, and indicted and punished accordingly.

When, therefore, the statute abrogates, as to *felony also*, the distinction between principals, and accessories before the fact, the latter must be deemed principals.

Again, an accessory before the fact is certainly "concerned in the commission of the offense," and is one "who aids and abets in its commission, though not present," for his proper definition is, "one who, though absent at the time of the commission of the felony, doth yet procure, counsel, command or abet another to commit such felony." 1 *Hale, Pleas of Crown*, 615.

He is, therefore, within the express provision of the latter clause of sec. 10; and to be indicted as a principal, at least, in

cases in which, as in this, it is legally possible for the defendant to commit, *directly,* the offense charged.   *Shannon vs. People,* 5 *Mich.* 71.

The indictment may charge him directly with the commission of the principal offense, or it may charge him as principal, by stating facts which at common law would make him an accessory before the fact.

Evidence which would be proper in support of an indictment against the defendant at common law as an accessory before the fact, would, therefore, be proper in support of this indictment.   *Baxter vs. The People,* 3 *Gilman* 368;  5  *Cal.* 133; 1 *Bish. Cr. Pr. sec.* 547.

One Essex, a witness for the prosecution, testified to conversations about the robbery with defendant, while they were both confined in Ramsey county jail, and was asked, "What did he say about the division of the money?"

To this the defendant objected, that it went to charge him as accessory after the fact, not before, and as there was no evidence of any confederacy of defendant with any other parties in regard to the offense charged, such testimony is inadmissible; to which it is a sufficient answer, that if the jury believed the evidence of said Essex, of one Brainard, and of Toher and Hellick, who had testified for the state, there was evidence in the case tending to show a conspiracy between defendant and his son, said Howard, and one McGregor to rob the bank.   For the same reason, the valise and burglar's tools taken up by the robbers to Austin, whither they were brought by him from his house, and the linen coat belonging to one of them, found in the bank after the robbery, were properly admitted in evidence ; not to mention that his statement that he supervised the making of some of the implements, and the fact, that the valise, with the tools that were not needed, was sent

State of Minnesota v. Beebe.

back to Iowa, where defendant lived, by express, and that he sent for it to the express office, were directly sworn to.

When the prosecution rested defendant moved to dismiss, for several reasons, all of which, but one, are sufficiently answered by what has already been said, and the further remark that they appear to be based on a mistaken view of the testimony. The objection referred to is, that there is no proof that any money, which was legal currency, was lost or taken; that it is just as necessary to have the proof full and particular, as it is that the allegation in the indictment should be particular.

In support of the latter remark, the defendant refers to State vs. Hinckley, 4 Minn. 345, to the effect, that the property should be described in an indictment by the number of bills; their denomination; by what bank issued; that they were genuine or current; which, however, is qualified by the statement, that the certainty required may be dispensed with where it is impossible for the grand jury to state the facts with legal certainty, and that fact appears in the indictment. The indictment in this case, is within such exception.

The proof in this case was, that there was stolen some $2,735, in $5, $10, and $20 bills; national bank bills, and United States bills, legal tender.

This was certainly competent evidence in support of the indictment which charges the larceny of "genuine U. S. legal tender notes, genuine national bank bills, current as money."

Language would cease to have any practical force in courts of justice, if such an expression as "United States legal tender note" were not held to convey the idea of a genuine and current treasury note.

The defendant moved to strike out certain testimony, as not in any manner connected with the defendant.

It related to acts done by, and conversations of other par-

ties, before mentioned, in the course of the transactions; and there was testimony, as already remarked, tending to show that the defendant was their confederate. The motion was, therefore, properly denied.

It is claimed to be error that the court, after the close of the testimony, allowed one of the counsel for the prosecution to "first sum up the cause, notwithstanding the defendant claimed the right to first sum up." This, however, was a matter of discretion with the court. *Gen. Stat. ch.* 66, *sec.* 209.

No prejudice is shown to have resulted to defendant, and it is difficult to see how he could be prejudiced, by being thus advised of the line of argument of the prosecution. It is a common practice in our courts, in criminal cases, where more than one counsel is engaged on a side; and we do not know that it has ever been suggested, that the defendant was, or could be injured thereby.

The defendant requested the court to give nineteen separate instructions. Five were refused. The 10th and 18th require no other remark than that they appear to be based on an erroneous theory of the evidence. The 11th is as follows: "That if the jury find that the intention and plan of Josh, and Mac, and Howard, to take the money at Waseca, was not formed until they separated from defendant at Austin, they must acquit the defendant."

This, taken literally, would require the jury to acquit defendant, if his confederates, though intending to rob the bank, did not fix on the way in which to carry out their intention, till after the defendant parted from them at Austin, to which place, it was the theory of the prosecution, he had brought them in furtherance of the conspiracy. It was, therefore, *per se*, erroneous in point of law, and in matter of fact might have misled the jury, since it appeared from the evidence, that the

State of Minnesota v. Beebe.

plan adopted was not fixed upon till after the defendant had left them.

The 15th was as follows: "That even if the jury find that the defendant had counselled, hired, or otherwise procured the commission of some offense in Minnesota, unless the jury find that he counselled, hired, or procured the commission of this particular offense charged, they must acquit the defendant."

It might, we think, have been well objected to this instruction, that the defendant might *aid* and *assist* in the commission of the particular offense charged, and, therefore, might be liable, although he did not counsel, hire, or procure it to be committed.

The court, in its general charge states the law more specifically, and in a way which the jury would more readily apply, and which, moreover, avoids the exception to which this instruction is liable, as above stated. And if the instruction was unexceptionable, there is no rule which requires the judge to give it in the very language selected by the party. *State vs. McCarty, Jany. T.* 1871.

The same remark applies to the 11th request, the general charge embodying what was correct, and excluding any liability of an erroneous impression on the jury.

The 17th request, (which was refused,) was as follows: "If a party is charged with a crime which is endeavored to be fastened upon him by circumstantial evidence, or by witnesses of doubtful credit, proof of defendant's good character for honesty and integrity, is proper to rebut any presumption of guilt arising from such evidence."

The case shows that the court did charge as follows: "the defendant has been permitted to give evidence of good character; this is always admissible when the state seek to fasten the crime upon the defendant by circumstantial evidence, and the defendant is entitled to the benefit of it, as going to rebut

the presumption of guilt arising from the circumstantial evidence given by the state against him."

It is apparent that the instruction asked *might* be liable to misconstruction in a way which that given would not; *i. e.* it might be construed by the jury to mean that the evidence in question would *rebut* the presumption of guilt; whereas it is evidence proper to be considered by the jury, the effect of which, as to whether it does in fact rebut or not, is for them to decide.

The charge actually given is correct as far as it goes, though the court might have gone farther, and stated that the defendant's character for honesty is admissible upon indictments for larceny, or fraud of any description.    *Starkie Evid. Pt. 4, p.* 366.

The instruction asked is, moreover, objectionable, in that it puts circumstantial and direct evidence on the same footing on a point as to which their effect is entirely different.

Guilt may be inferred from circumstances, and it is a proper enough use of language to say that the presumption of innocence arising from good character, is admissible, as tending to rebut the presumptions of guilt arising from circumstances; but it would not be, to say that the presumption of innocence arising from good character was admissible, as tending to rebut the presumption of guilt arising from positive proof of the act.    Such proof does not raise a presumption; it applies directly to the fact to be proved, without any intervening process.    *Gr. Ev. sec.* 13.

Take this case, as defendant states it, viz.: that six witnesses proved his character good, and two avowed villains, of the deepest die, were the only material witnesses against him ; but the two swore to facts, which (if the jury believed them,) constituted the defendant an accessory before the fact to this larceny, and left nothing for inference.

With this evidence from these witnesses before them, it

would certainly be improper to give the jury an instruction which might lead them to infer that their testimony, however direct or positive, could only raise a presumption of defendant's guilt. In other words, it can never depend on the character of the witness, whether his evidence tends directly to prove the fact, or merely to raise a presumption that it is so. Of course the jury should weigh the presumption of innocence arising from proof of defendant's previous good character, against the *credibility* of such men, and if the defendant thought the jury required any further instructions, as to the caution with which their testimony should be received, than those given at his request, and had asked for it, there is no reason to suppose, in view of the liberality of the instructions actually asked and given, that it would have been refused.

Judgment affirmed.