PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* NICOLÁS RODRÍGUEZ VEGA, *alias* CARTUCHO, Defendant and Appellant.

No. 5465. Argued April 12, 1934.—Decided April 20, 1934.

Appellant appeared in his own behalf. *R. A. Gómez, Fiscal,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

An information was filed in the District Court of San Juan which, in its pertinent part, reads as follows:

"The district attorney files an information against Nicolás Rodríguez Vega, *alias* Cartucho, for a subsequent offense of burglary in the first degree, a felony, committed in the following manner:

"The said Nicolás Rodríguez Vega, *alias* Cartucho, on or about January 6, 1934, and in the city of San Juan, Puerto Rico, which forms part of the judicial district of the same name, illegally, wilfully, and maliciously, with the criminal intent to commit larceny and deprive the owner of his legitimate property, took and carried away a man's cassimere suit valued at $20, a man's shirt valued at $3.50, a tie valued at $1.50, a box with three handkerchiefs valued at $1, and a man's cap valued at 50 cents, which articles belong to and are the property of Rafael Questgla. And the district attorney also alleges that Nicolás Rodríguez Vega, *alias* Cartucho, is a subsequent offender, inasmuch as before the commission of the larceny of which he is accused herein, he was convicted of offenses of burglary in the first degree, and petit larceny (three convictions of burglary and seven of larceny are listed), the judgments of which became final (*firmes*), since no appeal was taken therefrom, and the sentences were served by the accused in the District Jail of San Juan and in the Insular Penitentiary."

Upon being arraigned the defendant pleaded guilty. The court rendered judgment finding him "guilty of a subsequent offense of burglary in the first degree" and sentenced him to three years' imprisonment in the penitentiary.

Thereupon the defendant appealed, and in a motion entitled "of impeachment" he requests the reversal of the judgment because the information does not specify the hour when the offense was committed; and in addition he has filed his brief separately, in which he says:

"That upon being summoned for the reading of the information, I pleaded guilty of burglary in the second degree, inasmuch as the offense was committed within the hours after 6 in the morning and before 6 in the afternoon.

"That I was at no time notified that a subsequent offense was charged in the information, when I pleaded guilty of burglary in the second degree."

Both documents appear signed by the defendant in person.

All that appears from the record is that on "January 8, 1934, and in open court the defendant Nicolás Rodríguez Vega, *alias* Cartucho, appeared to hear the reading of the information in the present case. After the district attorney had read the same to him and the court had asked him what he intended to plead, he stated that he confessed himself guilty of the offense with which he was charged, and requested that sentence be pronounced against him immediately."

That being so, there is no basis for the assertion of the defendant that he pleaded guilty of burglary in the second degree, and it must be accepted as a fact that he pleaded guilty of the offense charged against him in the information, which was read to him in open court.

What is that offense? In our judgment it is petit larceny, notwithstanding that it was characterized by the district attorney at the beginning of the information as burglary in the first degree. There is a conflict between the facts and the name—which is in itself a conclusion—and the facts prevail.

It is known that "neither the misnomer of the crime nor the omission to give it a name affects the validity of the indictment, if the averments are such as to describe an offense against the laws of the state." 14 R.C.L. 175.

Applying this rule the Supreme Court of Minnesota, in the case of *State* v. *Howard,* 34 L.R.A. 178, 180, said:

"The crime attempted to be charged in the indictment is 'offering a bribe to a juror,' or, strictly speaking, causing a bribe to be offered to a juror. In the caption of the indictment the crime is designated as 'bribery of a judicial officer.' This discrepancy is the first objection to the indictment urged by the defendant. An error in designating the name of the crime in the caption of the indictment is an irregularity only. The charging part of the indictment must be alone considered in determining whether the indictment charges a public offense. If it states facts showing the commission of a crime by the defendant, the law determines its name and nature, and neither a misnomer of the crime nor the omission to give it a name affects the validity of the indictment. *State* v. *Hinckley,* 4 Minn.

345; *State* v. *Garvey*, 11 Minn. 155; *State* v. *Coon*, 18 Minn. 518; *State* v. *Munch*, 22 Minn. 67.''

And the Supreme Court of Georgia, in *Lipham* v. *State*, 114 Am. St. Rep. 181, 182, said:

''. . . . The presentment, therefore, in its descriptive parts sets out an offense against the laws of this state. But it is said that the name of the offense is not set out in the presentment; that it should be alleged that the accused was guilty of incestuous adultery, whereas it was simply alleged that he was guilty of a felony. It is immaterial what the offense is called, if the averments of the presentment are such as to describe an offense against the laws of the state. It is not the name given to the offense in the bill which characterizes it, but the description in the averments of the indictment: *Camp* v. *State*, 3 Ga. 417, Van Epps' Annotations, 421.''

Since in order to properly charge the subsequent offense of petit larceny it is not necessary for the information to set out the hour when it was committed, the contention of the appellant is without merit.

Moreover, even though it were concluded that the appellant is right, and that he should have been found guilty of burglary in the second degree because the criminal act was committed in the daytime and not at night, the result would be the same. It would always be a case of a subsequent offense of petit larceny or of burglary in the second degree, and in either case the sentence imposed upon the defendant would be within the limits fixed by law. Sections 426, 427, 408, and 410 of the Penal Code in relation to sections 56 and 57 of the same code.

An examination of the record reveals another question which has not been raised, to wit, that the judgment also found the defendant guilty of having committed ''a subsequent offense of burglary in the first degree.''

Is this a fundamental error carrying with it a reversal of the judgment? In our opinion it is not. It is clearly seen that the court also designated the crime by a wrong name, and nothing more, and that the defendant was not prejudiced thereby.

Summing up the jurisprudence, Corpus Juris says:

"An erroneous statement of the offense is not fatal, where it is corrected by the record itself which shows what the offense really is." 16 C. J. 1322.

And of the cases cited in the note to the text, it seems advisable to refer to the two which follow:

"Although the record of sentence is not as specific as it ought to be in that it states that defendant was convicted of 'jail breaking,' when in fact he was tried and convicted for aiding an escape from jail, yet when, reading the record of sentence in connection with the whole of the files and records in the case, it sufficiently appears that defendant was legally convicted and sentenced for the crime set forth in the information, the error or defect in the sentence may be regarded as technical, not entitling defendant to discharge." *In re Parks,* 81 Mich. 240, 242, 45 N.W. 824.

"Where accused was indicted and convicted of murder, and the entire record showed that that was the only charge considered, the judgment of conviction was not invalid for reciting that accused was sentenced to the state penitentiary for life 'for such her crime of manslaughter,' the quoted part being a clerical error." *Johnson* v. *State,* 106 Miss. 94, 102, 63 S. 338.

What should this court do under those circumstances? Should it limit itself to dismissing the appeal or should it correct the judgment as the lower court would have done if the question had been raised before it?

"In the absence," says Corpus Juris, "of a statute permitting this to be done the appellate court has no power to amend or to correct the judgment. However, in the majority of jurisdictions, the appellate courts possess and exercise statutory power to reform and correct defects in the judgment and sentence appealed from, or to render the judgment which the court below should have rendered." 17 C.J. 365.

In Puerto Rico section 364 of the Code of Criminal Procedure expressly grants to this Supreme Court the power to reverse, affirm, or modify the judgment appealed from. Accordingly, paying heed to the voice of the record itself, allowing the facts set out in the information to speak for

themselves, and considering what they say in the light of what was provided in the Penal Code before they were committed, the judgment appealed from must be modified by substituting the words ''petit larceny'' for the words ''burglary in the first degree'' which appear in it, and, as modified, the judgment should be affirmed.