## STATE OF MINNESOTA vs. THOMAS J. SHIPPEY.

It appearing that the defendant deliberately and intentionally shot the deceased, the presumption is that it was an act of murder.

A party indicted is not entitled to an acquittal on the ground of insanity if at the time of the alleged offence he had capacity sufficient to enable him to distinguish between right and wrong, and understood the nature and consequences of his act, and had mental power sufficient to apply that knowledge to his own case.

The designed killing of another, without provocation and not in sudden combat, is none the less murder because the perpetrator of the crime is in a state of passion.

To determine on the sufficiency of the provocation to mitigate the killing from murder to manslaughter, the instrument or weapon with which the homicide was effected must be taken into consideration; if effected by a deadly weapon, the provocation must be great to lower the grade of the crime from murder.

When the revenge is disproportionate to the injury it can not be said in a legal sense to have been provoked by such injury.

Self-defence is *ex vi termini* a defensive, not an offensive act, and must not exceed the bounds of mere defence and prevention. To justify such act there must be at least an apparent *necessity* to ward off by force some bodily harm.

The mere fact that the defendant *believed* it necessary for him to act in self-defence would not warrant a "verdict of acquittal."

An error of the Court concerning an abstract proposition having nothing to do with the matter in hand, is not sufficient ground for reversing a judgment.

The objection that the signature by the foreman of the grand jury on the back of the indictment was not sufficient, not having been taken by motion to set aside the indictment or by demurrer, was waived.

This is an application on the part of the defendant to the Supreme Court for a new trial, under *sec.* 6, *p.* 777, *Comp. Stat.*

The defendant was tried upon an indictment for the murder of Frederick Raymond, at the October term of the Wright County District Court, 1864, and convicted of murder in the first degree. The indictment was in the form prescribed by statute, but was not signed on the face by the foreman of the grand jury, but was indorsed as follows: "A true bill. G. D. George, foreman of the grand jury." But no objection was taken thereto. At the trial, Edward Morse, a witness produced on the part of the prosecution, testified substantially as follows:

"I reside at Minneapolis; have seen prisoner; saw him on the 8th day of March, 1864, for the first time, in the township of Rockford; Fred. Raymond, David Kridler and David Beadle were with me; Raymond was the man killed. We were going from the village of Rockford to Woodland; the road led about six rods from Shippey's house, and when some quarter of a mile from Shippey's house, Raymond said he was dry and would like some water, and as we got opposite the house I said let us go in and get some, and we went into Shippey's enclosure. Shippey was outside of his house; it was about three o'clock in the afternoon; I asked him for a drink of water; he said nothing, but turned and went as though he was going to get some, going around his house a few steps and stopping. Raymond then asked for water. He then ordered us to leave, and said we had no business

there; Raymond then said, that is a strange way to use folks; Shippey then ordered us to leave again; I spoke to Raymond and said "let us leave and have no trouble with the old man; we had no arms or other implements of defence; Raymond said "of course," and then walked off, and I followed him towards the the road; did not see anything until I was going through the fence, Kridler spoke saying "Look out, Fred., he has a gun." I looked around and saw him with a gun in his hand; saw then a stick going through the air from the direction in which Raymond was towards Shippey; Raymond had passed out before me; this stick was about eighteen inches long and three-fourths of an inch thick, and looked like a root; do not think the club was thrown with the intention of hitting him; it was not thrown with much violence; do not think it went to Shippey; do not think Shippey had advanced towards us until the stick was thrown. When I first saw Shippey he was lowering his gun from the direction of Kridler; when Fred. threw the stick he pointed his gun at Fred.; Raymond then jumped behind a tree; Shippey did not speak that I heard; Shippey then stepped sideways as if he would like to get a shot at Raymond; Raymond then stepped from behind the tree and told him if he wanted to shoot, to shoot; prisoner then took a long aim at Raymond and fired; they were about twenty feet apart; Raymond then stepped two or three feet sideways and laid down. About an hour afterwards I went up to the body and found it in the same position; the body was taken down to the warehouse in Rockford."

Other evidence was introduced corroborating the testimony of Morse, and also proving the death of Raymond, and that it was occasioned by the discharge of Shippey's gun, testified to by Morse.

Several witnesses were introduced on the part of the defendant, who testified that they had known defendant for several years; that his conduct was singular; that he lived alone; had no books or papers, or any living thing about him; that he appeared suspicious of strangers, and to be alarmed and afraid when persons went to his house; that his looks were wild, but that he was per-

fectly rational in his business transactions. One J. S. Richardson was also examined as a witness on the part of the defendant, who testified that he had studied medicine two or three years, but had not taken any regular degree; had practiced it more or less for sixteen years, living on a farm the most of the time, and cultivating it, and also practicing medicine some; that he had known defendant two and one-half years; had not been called to attend him professionally; that he examined him and talked with him sufficiently to form an opinion as to his sanity; that he thought he was afflicted with melancholy or morbid insanity; that he did not examine defendant sufficiently to see if his brain was affected; that melancholy insanity generally makes the mind quiet; that he did not know what influence the melancholy might have; that there is no maliciousness about morbid insanity.

At the close of the testimony the counsel for the defendant requested the Court to charge the jury "that if the jury believe that the prisoner, at the time of the killing, believed in the existence of a state of facts which if true would have constituted self-defence, they must find a verdict of acquittal." The Court refused to charge as requested, but charged the jury "that the facts must be such as reasonably to have caused such belief or apprehension on the part of the defendant;" to which refusal and charge the defendant duly excepted. The Court also charged the jury "that if they find from the evidence that the defendant was at the time of the act laboring under insanity, or mental aberration, or delusion, to such a degree as not to be able to determine the character of the act he was doing, as to whether it was right or wrong, the defendant should be acquitted."

A bill of exceptions was made and allowed.

WILSON & McNAIR for Appellant.

I.—That the verdict should be set aside under *Sec.* 6, *page* 778, *Comp. Stat.*, on the ground that it was not warranted by the evidence. In that it appears therefrom—

1. That the mind of defendant was in such state of partial in

sanity, as rendered him incapable of committing murder in the first degree.

2. That the circumstances of provocation were such as should have convinced the jury, that defendant either imagined he was necessarily acting in self-defence, or his blood was so heated as to take the case out of the degree of crime found in the verdict.

II.—That new trial should be granted on account of error in the charge of the Court below. In that the counsel for defendant requested the Court to charge the jury, "that if the jury believe that the prisoner at the time of the killing believed in the existence of a state of facts, which if true would have constituted self-defence, they must find a verdict of acquittal," which the Court refused to so charge; and thus erroneously prevented the jury from considering one ground of defence. *See case of Commonwealth vs. Rogers, 7 Metcalf, 500; Russell on Crimes, page 8, note, and Roscoe on Criminal Evidence, page 593.*

III.—That the indictment in the case was not signed by the foreman of the grand jury finding it; for though the statutes provide that most defects in an indictment must be taken advantage of by demurrer, yet can it be considered an indictment at all unless signed by the foreman?

The indictment from its form would not be good at common law, and when it must rely for being good upon following a statutory form, can it vary in so important a particular and be valid?

G. E. COLE, Attorney General, for Respondent.

I.—The indictment is, so far as the signature of the foreman of the grand jury is concerned, strictly in accordance with the statute. *Sec. 60, page 754-5, Comp. Stat.*

The signature of the foreman under the words "a true bill," without regard to the part of the indictment in which it appears, is always sufficient. *Wharton's Am. Cr. Law, 497-8.*

II.—No objection being made upon the trial to the indictment, all such objections are waived, and cannot avail the defendant at this stage of the cause. *Sec. 108, 109, page 764, Comp. Stat.*

III.—There being evidence in support of the verdict, it requires no citation of authorities to show that this Court will not disturb it.

IV.—The evidence in this case is so entirely conclusive, and there being absolutely no evidence tending to absolve the defendant from the guilt of the crime for which he was convicted, it is difficult to discover any other object than delay in the present motion.

V.—(a.) The charge of the judge excepted to was strictly correct as given, even when tested by the doctrine of Selfridge's case —a case which has been severely criticised, was decided not upon legal but political grounds, and which sought to engraft the principles of the code of honor upon the maxims of criminal jurisprudence.   *Wharton's Cr. Law*, 1026.

(b.) The charge as requested, even if abstractly correct, was utterly inapplicable to the case at bar, there being no evidence tending to show any belief of danger to life or limb in the mind of the defendant.   *Derby vs. Gallop*, 5 *Minn.*, 138.

*By the Court*—WILSON, C. J.—The defendant applies to this Court for a new trial under *Sec.* 6, *page* 777, *of the Comp. Stat.*

The grounds of the motion are (1), that the verdict is not warranted by the evidence, (2), error in the charge of the Court, (3), that the indictment was not signed by the foreman of the grand jury.   I cannot say that the evidence did not warrant the verdict.

It clearly appears that defendant deliberately and intentionally shot the deceased, and from this the presumption is that it was an act of murder.   *Com. vs. York*, 9 *Met.*, 93.   This presumption it was for the defendant to rebut.   I think it very clear that the evidence would not have justified the jury in acquitting the defendant on the ground of insanity.

His suspicion of strangers, apparent melancholy and peculiarity of deportment generally are not proof of insanity, as that term is popularly understood.   Perhaps by theorists these peculiarities may be considered evidences of insanity.   It is indeed very difficult to define that invisible line that divides insanity from sanity,

but such speculation is not here necessary; for a party indicted is not entitled to an acquittal on the ground of insanity, if at the time of the alleged offence he had capacity sufficient to enable him to distinguish between right and wrong, and understood the nature and consequences of his act and had mental power sufficient to apply that knowledge to his own case. *Commonwealth vs. Rogers*, 7 *Met.*, 500.

I think the evidence does not show insanity of any grade; certainly it falls far short of showing such insanity as would be a proper ground of. defence according to this rule.

But the defendant's counsel insist that though insanity was not proven, "that the circumstances of provocation were such as should have convinced the jury that the defendant either imagined he was necessarily acting in self-defence, or that his blood was so heated as to take the case out of the degree of crime found in the verdict." Under our statute the killing of a human being in the heat of passion upon sudden provocation, or in sudden combat intentionally, is manslaughter, not murder. It was for the jury to say whether the homicide in this case was committed under such circumstances, and by their verdict they have negatived that hypothesis; and in this respect too, I think their verdict is justified by the evidence.

The designed killing of another without provocation and not in sudden combat, is none the less murder, because the perpetrator of the crime is in a state of passion. *People vs. Sullivan*, 3 *Selden*, 399; *Penn vs. Bell, Addis.*, 156; *Penn vs. Honeyman, Id.*, 149; *State vs. Johnson*, 1 *Iredell*, 354; *Preston vs. State*, 25 *Miss.*, 383; *Campbell vs. State*, 23 *Ala.*, 44. And where there are both provocation and passion, the provocation must be sufficient. *See cases last cited.*

The circumstances of provocation proven in this case were not sufficient to extenuate the guilt of the homicide, or reduce the crime to the grade of manslaughter.

The provocation given by the deceased in trespassing on defendant's land, is not such as would provoke any person not wholly regardless of human life to use a deadly weapon. Nor is it such

as the law will recognize as sufficient to reduce the killing below murder. *Commonwealth vs. Drew*, 4 *Mass.*, 396; *State vs. Beauchamp*, 6 *Blackf.*, 299; *State vs. Morgan*, 3 *Iredell*, 186; *Monroe vs. State*, 5 *Geo. R.*, 85; 1 *Arch. Crim. Prac. and Pl.*, *(7th Ed.,)* 808, 809, 810.

Without farther provocation than this, so far as the evidence shows, the defendant took his gun and followed deceased, with the apparent purpose of shooting him or his companion. It is true that before the prisoner shot deceased, the deceased threw at him (but did not hit him with) a stick or club; but I think that this could not be considered such provocation as the law looks upon, as an alleviation of the homicide from murder to manslaughter.

There is a wanton disregard of human life and social duty in taking or endeavoring to take the life of a fellow being, in order to save ourself from a comparatively slight wrong, which the law abhors.

To determine on the sufficiency of the provocation to mitigate the killing from murder to manslaughter, the instrument or weapon with which the homicide was effected must be taken into consideration; for if it was effected with a deadly weapon, the provocation must be great indeed to lower the grade of the crime from murder; if with a weapon or other means not likely or intended to produce death, a less degree of provocation will be sufficient; in fact, "the instrument employed must bear a reasonable proportion to the provocation to reduce the offence to manslaughter." *Wharton Cr. Law*, (2 *Ed.*,) 368–9, *and cases cited in notes;* see also 7 *Arch. Crim. Prac. and Pl.*, (7th *Ed.*,) 803–4, 808–9–10, 816, 821, *and cases cited in the notes;* *Com. vs. Mosler*, 4 *Barr;* *Regina vs: Smith*, 8 *Car. & Payne*, 160.

The revenge in this case was disproportionate to the injury, and outrageous and barbarous in its nature, and therefore cannot in any legal sense be said to have been provoked by the acts of the deceased.

The facts in this case incontrovertibly show that the prisoner did not act and could not have supposed it necessary to act in

self-defence.   He was the pursuer not the pursued.   Self-defence can only be resorted to in case of necessity.

The right to defend himself would not arise until defendant had at least attempted to avoid the necessity of such defence. *People vs. Sullivan*, 3 *Seld.*, 399 ; *Wharton Cr. Law*, 386 ; *Regina vs. George Smith*, 8 *Car & Payne*, 160.

The defendant's counsel asked the Court to charge the jury, "That if the jury believe that the prisoner at the time of the killing believed in the existence of a state of facts, which if true would have constituted self-defence, they must find a verdict of acquittal," which the Court refused ; but charged the jury that "the facts must be such as reasonably to have raised such belief or apprehension on part of the defendant."

The Court was correct in refusing to charge as thus requested. The mere fact that defendant *believed* it necessary for him to act in self-defence would not warrant a *"verdict of acquittal."*

It is not enough that the party believed himself in danger, unless the facts and circumstances were such that the jury can say he had reasonable grounds for his belief.   *Comp. Stat.*, 703, *Sec.* 5 ; *Shorter vs. People*, 2 *Conn.*, 193 ; *Wharton's Cr. Law*, 386 ; *Arch. Cr. Prac. and Pl.*, 798 ; *U. S. vs. Zigol*, 2 *Dallas R.*, 346

In Tennessee, I believe, it has been held otherwise, (*Grainger vs. The State*, 5 *Yerger*, 459,) but I think this decision stands alone, unsupported by either principle or authority.   Such belief would perhaps reduce the crime to manslaughter, but whether it would or not it is not necessary to decide in this case.

The only exception taken to the charge of the Court is above given, and we must therefore presume that in every other respect it was full and correct.   But even if the charge in this respect had been erroneous, it would not be a good ground for reversal of the judgment.   Self-defence. *ex vi termini* is a defensive not an offensive act, and must not exceed the bounds of mere defence and prevention.

To justify such act there must be at least an apparent *necessity* to ward off by force some bodily harm.

Where the party has not retreated from or attempted to shun the combat, but has as in this case unnecessarily entered into it, his act is not one of self-defence.

The plaintiff by taking his gun and following after the deceased without any previous provocation, (such as the law will recognize as provocation for the use of a deadly weapon,) showed conclusively that the homicide was not committed in self-defence, real or imaginary. The evidence, therefore, did not make a case for laying down the law of self-defence, and an error of the Court concerning an abstract proposition having nothing to do with the matter in hand, is not sufficient ground for reversing a judgment. *Shorter vs. People*, 2 *Conn.*, 202.

. The other ground on which defendant's counsel ask a new trial, is that the indictment was not signed by the foreman of the grand jury.

Whether the signature by the foreman on the back of the indictment was sufficient it is not necessary for us now to decide.

This objection, not having been taken by motion to set aside the indictment or by demurrer, was waived. *Sec.* 2, *page* 764, *and Sec.* 11, *page* 766, *Comp. Stat.* I have felt in the examination of this case a great anxiety to discover some legal ground on which to grant the defendant a new trial, but governed as the Court is and ought to be strictly by the rules of law, I have failed to see any ground for such action. It is for us to declare the law, and if this is a case in which it should not be rigorously enforced, the State executive only can apply the remedy.

New trial denied.