## THE STATE OF MINNESOTA

### *vs.*

### ALFRED HOYT.

1. The defendant having been indicted for murder, was brought into Court and arraigned.  Thereupon his counsel moved to quash the indictment on the ground that the defendant was confined in jail at the time the grand jury were impanneled, sworn, and engaged in finding the indictment, and had no opportunity to challenge the grand jury or any individual grand juror.  No attempt was made to interpose a challenge, though the prisoner's counsel were in Court when the grand jury was impan-

The State of Minnesota v. Hoyt.

neled and sworn, nor did it appear that any cause of challenge existed. *Held :*—That the motion was properly denied.

2. The reception of evidence having no tendency to establish the charge contained in the indictment, and the natural effect of which is to prejudice the jury against the defendant, is ground for a new trial.

3. Upon the trial of an indictment for homicide, proof of wounds not mentioned in the indictment may properly be received, if such proof agree in substance and generic character with the allegations of the indictment.

4. To lay the proper foundation for previous statements of a witness contradictory to his testimony upon the stand, the general rule in regard to verbal statements is that such witness must first be asked as to the time, place and person involved in the supposed contradiction. The *precise* date need not be indicated. The object is, in justice to the witness and party calling him, to call the attention of the witness to the occasion referred to with reasonable certainty.

5. The evidence in this case tending to show a killing with an axe, by inflicting therewith blows upon the head and neck of the deceased, which are claimed to have been inflicted in resistance of a civil trespass upon the lands or cattle or both of defendant, and there being no pretense that the weapon was used without a design to effect the death which followed its use. *Held :*—That to such a state of facts *Sec.* 13, *page* 598, *Gen. Stat.,* has no application.

6. It is the province of the Court to define what would constitute a provocation, by informing the jury that it must be something, the natural tendency of which would be to disturb and obscure the reason to an extent which *might render* the average of men of fair average mind and disposition liable to act rashly, and without due deliberation or reflection, and from passion rather than judgment, and something which the jury are satisfied did so disturb and obscure the reason of the defendant in the case before them, so that the homicide was the result of the provocation. It is for the jury, under instruction of this general nature, to determine whether the provocation in the particular case on trial is sufficient. The Court may properly elaborate and illustrate such general instruction, as circumstances may require, to bring the law clearly to the comprehension of the jury.

7. In case of killing in heat of passion, upon sudden provocation, to determine on the sufficiency of the provocation to mitigate the killing from murder to manslaughter, the instrument or weapon with which the homicide was effected must be taken into consideration; for if it was effected with a deadly weapon, the provocation must be great indeed to lower the grade of the crime from murder.

8. Where the intention to kill is formed and executed *in* the heat of passion, upon sudden provocation, or in sudden combat, the case falls within the meaning of *Sec.* 12, *page* 598, *Gen. Stat.*, where it speaks of a killing "intentionally but without premeditation."

If the intention to kill is formed *before* the heat of passion, upon sudden provocation, or in sudden combat, or though formed in the heat of passion is executed after sufficient cooling time, or after the heat of passion has subsided, the killing is with a premeditated design to effect death.

9. Where a homicide is committed in heat of passion, in sudden combat, the character of the weapon used is not to be taken into consideration in reference to a provocation, nor. in such case is it necessary that there should have been any legal provocation. But the character of the weapon may properly be considered in case of homicide in sudden combat, for the purpose of determining whether the party killing entered upon the combat with a premeditated design to kill, and such intention might be inferred from his preparing himself with a deadly weapon previous to the combat, and for the purposes of the combat, when his adversary was in possession of no deadly weapon, or other means of inflicting great bodily harm.

The defendant was indicted at the May term, 1867, of the District Court for Rice County, for the murder of Josiah E. Stamford, on the 30th day of April, 1867, and the defendant arraigned. A motion was made by his counsel to set aside the indictment, and denied, and defendant excepted; which sufficiently appears in the opinion of the Court. The cause was brought to trial at the October term, 1867, of said Court. The homicide was established by admissions of the defendant made soon after, and the wounds described in the indictment as "one mortal wound in and upon the back side of the head, and one mortal wound in and upon the left side of the neck of him the said Stamford," and that the wounds were inflicted with an ax and caused Stamford's death were proven. It appeared from the evidence and from the admissions of the defendant that the deceased and the defendant had an altercation about the cattle of the defendant; that defendant was driving or attempting to drive them in and along a pub-

lic road or common highway in one direction, and the deceased endeavored to drive the cattle in another direction, and that the defendant then killed the deceased.

The defenses were—1st, insanity at the time of the commission of the homicide, and 2d, "that the offense, if any, was committed in a heat of passion, upon sudden provocation and in sudden combat, but without premeditation, and that it was committed while resisting the deceased in doing the unlawful act of forcibly and violently driving the cattle along and out of the highway." Testimony was given tending to establish both defenses. It was admitted that no quarrel had ever occurred between the defendant and the deceased previous to the time of the homicide. The first exception to the admission of evidence on the part of the prosecution, and the grounds of the objection thereto, and the evidence received, are fully stated in the opinion of the Court.

The counsel for the State asked a witness to describe the wounds on the body of the deceased; and defendant objected to any evidence of wounds not described nor mentioned in the indictment. The objection was overruled, and defendant excepted, and the testimony was taken.

The counsel for the State asked Mrs. Maria Root, a witness called in behalf of the State to impeach the testimony of Emma Hoyt, a witness who had testified on the part of the defendant, the following question: " State what conversation you had with Emma Hoyt at the last time you conversed with her at your house, respecting what her father (the defendant) said about killing the deceased. " The defendant objected to the question, on the ground that no sufficient foundation was laid in the testimony given by Emma Hoyt in that her attention had not been called to the conversation which it was proposed to prove by the witness. The witness Emma Hoyt during her cross-examination by the counsel for the State had

testified to conversations with this witness (Mrs. Maria Root), but the questions put to her, or the language used by the counsel calling out her testimony, do not appear. The objection was overruled and the defendant excepted, and the testimony was taken.

There are several exceptions by the defendant to the rulings of the Judge in refusing to charge as requested, and to the charge as given, which also fully appear in the opinion of the Court. The jury returned a verdict of guilty of murder in the first degree; and a motion was made to set aside such verdict, and for a new trial, which was denied, and the Court pronounced its sentence. The defendant appeals to this Court.

BATCHELDER & BUCKHAM and GEORGE W. BAXTER for Appellant.

I.—The Court below erred in refusing to set aside the indictment found by the grand jury against said defendant upon the motion of defendant.

Because that the defendant was confined in jail until after the finding of the said indictment, and had no opportunity to challenge the said grand jury.

The fact that defendant's counsel were in Court at the time of impannelling the grand jury, and *before* they were sworn and retired, does not show any opportunity of challenging said jury. See *Gen. Stat., p.* 637, *Sec.* 13.

II.—The Court below erred in allowing the witness, Mrs. Stamford, to testify about the assault which the defendant committed on her, because

1. The evidence tended to support a charge against defendant of which he was not advised by the indictment, and that in point of fact there was another indictment pending

against him for the very offense that the evidence objected to would tend to establish.

2. That said evidence did not tend to support any allegation of the indictment, and only tended to prejudice the jury against the defendant.

3. The said evidence tended to prove an offense unconnected with that charged in the indictment, which was committed at a different time, at a different place, and upon a different person. *State vs. Hoberg*, 3 *Minn.*, 262; *People vs. Thurston*, 2 *Park. C. Rep.*, 130; 2 *Russ.*, *Crimes*, *p.* 7 :2 to 775; *Roscoe's Cr. Ev.*, 81 *to* 84.

III.—The Court erred in permitting the State to prove wounds on the body not mentioned in the indictment, because the indictment charges the defendant with inflicting two mortal wounds, of which the said Stamford died.

The State was permitted to show some wounds which might have been mortal, and which the jury may have inferred were made by the defendant, and were the cause of Stamford's death.

IV.—The Court erred in permitting witness, Maria Root, to testify to conversations with the witness, Emma Hoyt, because the attention of the witness, Emma Hoyt, had not been called to any conversation with the witness, Maria Root, occurring at such times and places. 1*st Green Ev.*, *Sec.* 462; *Palmer vs. Knight*, 2 *Barb.*, 210; *Kimball vs. Davis*, 19*th Wend..*, 437

V.—The Court erred in refusing to give, in charge to the jury, the 1st, 2d, and 3d instructions asked for by the defendant, because

1. The evidence showed beyond question that the offense was committed while defendant was resisting an attempt by deceased to commit a forcible and violent trespass upon the cattle of defendant.

2. An assault or trespass with force and violence on such cattle at such time by driving or running, worrying or beating them in the highway, is an unlawful act, and the unnecessary killing of deceased by defendant while resisting such unlawful act, was not murder, but manslaughter in the second degree.

3. And if such killing was necessary to prevent such unlawful act, the killing was manslaughter in the fourth degree. *Gen. Stat., p.* 598, *Sec.* 13.

VI.—The Court erred in charging the jury that they must take into consideration the weapon used by defendant.

The killing of deceased in a heat of passion, in sudden combat, with a deadly weapon, (or intentionally, which is the same), and without premeditation, comes precisely within the definition of manslaughter in the second degree, see *Sec.* 12, and therefore cannot be murder in the first degree. *Ros. Crim. Ev.,* 737, 738, 739, 724, 685; *Com. vs. Drew,* 4 *Mass.,* 391, *cited in* 1st *Archibald,* 811; 1 *Russ.,* 583 *and* 584; *Rosc. Cr. Ev.,* 724, 728, 729; 1st *Whar.,* 712 *and* 944.

VII.—The charge of the Court that if the homicide was committed in a heat of passion, in sudden combat, with a deadly weapon, the provocation must be great, indeed, to reduce the offense from murder to manslaughter, is contrary to all authority. *People vs. Johnson,* 1 *Park. Crim. Rep.* 298; *Rosc., Cr. Ev.* 681 *and* 684; 1st *Russ.,* 587 *and* 588; 1st *Whar., Sec.* 987 *and* 979.

VIII.—The Court erred in instructing the jury that it was a question for the jury to determine whether the provocation proved was sufficient in law to reduce the offense from murder to manslaughter. *2d Arch. C. Pl.,* 6th *Ed., p.* 226, *note; Foster*' 290; 1 *Hawk., C.* 31, *Sec.* 33 *and* 34.

IX.—The case shows unmistakably, that the offense was committed in a heat of passion, upon sudden provocation, intentionally, but without premeditation.

The State of Minnesota v. Hoyt.

And, also, that it was committed while defendant was resisting an attempt by deceased to do an unlawful act.

There is preponderating evidence that the offense was committed in a sudden combat between the defendant and deceased, which should have convinced the jury, and which must have raised reasonable and grave doubts in their minds if they were not prejudiced against defendant. *Ryan's Case,* *1st Arch.*, 813; *2d Wheel.*, *C. C.* 47; *People vs. Ward,* 2 *Wheel.*, *C. C.*122; *People vs. Johnson,* 1 *Park.*, *C. Rep.* 291; *People vs. Sullivan,* 1 *Park.*, *C. Rep.* 349, 355 *and* 258; 16 *N. Y.* 66; 3 *Gray,* 463; *Gen. Stat.*, 585, *Sec.* 3. \* \* \* \*

F. R. E. Cornell, Attorney General.

I.—The first point made by appellant has already been decided against him by this Court. It is *res adjudicata.* *Mayo vs. State of Minnesota,* 3 *Minn. R.*, 444; *The State vs. Hinckley,* 4 *ib.*, 363–4.

II.—There was no error in the reception of the testimony of Mrs. Stamford in regard to the conduct and declarations of defendant immediately after the commission of the offense charged.

One of the defenses interposed by defendant was his insanity. Clearly they were competent upon this question, even though they tended to prove another offense for which he was indicted. *Roscoe's Cr. Ev.*, 82, 83, 89, 95.

III.—The appellant's third point is too untenable for argument.

IV.—There was a substantial compliance with the rule requiring a witness' attention to be called to a particular conversation out of Court, before being permitted to prove statements made in such conversation, conflicting with those given in Court, and hence there was no error in this respect.

V.—A mere trespass upon one's property, not his dwelling

house, is not a sufficient provocation to warrant the owner in using a deadly weapon in its defense; and if he do, and with it kill the trespasser, it will be murder, even though the killing was necessary to prevent the trespass. To extenuate the offense in such case, it must be shown that the intention was not to take life, but merely to chastise for the trespass, and deter from its repetition. *Wheat. Cr. Law, Sec.* 975; *Com. vs. Drew,* 4 *Mass.,* 391.

Hence the refusal of the Court to charge defendant's first and third requests was correct.

Such refusal was correct for the further reason, that those requests assume that the killing, under those circumstances, would be only manslaughter in the second degree, even though it was done with express malice, and a premeditated design to effect the death of the person killed.

VI.—Defendant's second request, taken alone, was irrelevant, and its refusal, whether the proposition was correct law or not, could not prejudice.

VII.—In case of homicide in mutual combat, upon sudden provocation, the question as to the character of the weapon used, if any, whether deadly or not, and whether the parties thereto entered upon the combat upon equally advantageous terms, is always a proper subject of inquiry for the jury in determining the grade of the offense, and whether the killing was with premeditated design or not. Slight or ordinary provocation will not warrant the use of a deadly weapon, and the charge of the Court that "if a deadly weapon was used, the provocation must have been great, indeed, to reduce the grade of the crime to manslaughter," was correct. *The State vs. Shippey,* 10 *Minn. R.,* 223; *Wheat. Cr. Law, Secs.* 971, 974–5; 3 *Seld.,* 384; 4 *Park. Rep.,* 35; 1 *Russell on Crimes,* 529, 580.

*a.* The charge of the Court that it was a question for the

jury to find whether there was sufficient provocation in this case to reduce the grade of the offense, was not submitting to them a question of law, but one of fact, viz : was the provocation great ? If the instruction was not sufficiently definite as to the degree, the defendant should have asked for specific instruction upon that point.

*By the Court*—Berry, J.—

I.—The defendant was indicted by a grand jury of Rice County for murder. Upon being brought into Court and arraigned, his counsel moved to set aside the indictment upon the ground " that he was confined in jail at the time that the grand jury were impanneled, sworn and engaged in finding the said indictment, and had no opportunity to challenge the panel of the grand jury, or any individual grand juror." The denial of this motion is the first alleged error. The case shows that no attempt was made to interpose a challenge, and, although the fact may not be important, that the defendant's counsel were in Court at the time when the grand jury were impanneled and sworn. It does not appear that any cause of challenge existed.

The point raised has already been settled adversely to the views of the defendant's counsel in *Maher vs. State*, 3 *Minn.*, 445, and in *State vs. Hinckley*, 4 *Minn.*, 363-4, and we see no reason for re-examining it. See also *People vs. Jewett*, 3 *Wend.*, 313.

II.—Mrs. Stamford, the wife of deceased, testified before the State rested, " that when defendant came to her house on the morning of and after the homicide, he said to her that he had killed Mr. Stamford, and was going to kill her." The attorney for the State then asked the witness the following question : " What did the defendant do then ? "

The counsel for the defendant objected. The objection being overruled, defendant excepting, the witness answered :

"He raised his axe to strike me, and kept striking at me, and threw me upon the floor, but I caught hold of the axe and held to it until the boys came. He kept grinding his teeth and saying 'God damn you.'" This testimony was improperly admitted. The transaction testified to took place some time after and at a distance of a half mile or more from the scene of the homicide. The testimony had no tendency to establish the charge contained in the indictment, and its natural effect was to prejudice the jury against the defendant. *State vs. Hoberg*, 3 *Minn.*, 262; *People vs. Thurston*, 2 *Park. Cr. R.*, 130; *Roscoe Cr. Ev.*, 81.

III.—The counsel for defendant contend that the Court erred in permitting the State to prove wounds not mentioned in the indictment, wounds which might have been mortal, and which the jury may have inferred were made by the defendant, and were the cause of Stamford's death.

There is nothing in this point. "*It is sufficient if the proof agree with the allegation in its substance and generic character*, without precise conformity in every particular." 3 *Gr. Ev.*, Sec. 140; 1 *Ibid, Sec.* 65; *Sanchez vs. People*, 22 *N. Y.*, 149; 1 *Russell on Crimes*, 560; *Roscoe Cr. Ev.*, 108; 1 *Archbold Pr. and Pl., 7th Ed.*, 888; 4 *Parker's Cr. R.* 552; *Rex vs. Waters*, 7 *C. and P.*, 250; 2 *Bishop Cr. Pro.*, Sec. 528.

IV.—The defendant claims that the Court erred in permitting Maria Root to testify to statements made by the witness Emma Hoyt, contradicting her testimony upon the stand, because a proper foundation had not been laid, by first calling the attention of Emma Hoyt to any conversations with Maria Root occurring at the times and places at which Maria Root testified that such statements were made.

It appears from the case that upon an examination by the State a question was addressed to Emma Hoyt "concerning alleged conversations with Mrs. Maria Root." What the *lan-*

*quage* of the question was, we are not informed, and therefore we are not able to determine whether the requisite foundation referred to was laid or not.    It does not, then, *appear* that there was error.  To lay the proper foundation, "it is generally held necessary, in the case of verbal statements, first to ask as to the time, place and person involved in the supposed contradiction."   1 *Gr. Ev., Sec.* 462.

The *precise* date, however, need not be indicated.   *Pendelton vs. Empire Stone Dressing Co.,* 19 *N. Y.,* 18.   The object is, in justice to the witness proposed to be contradicted, as well as in justice to the party calling him, to point out the occasion referred to, with such reasonable certainty as to recall it to the mind of the witness, so that he may have an opportunity to correct his statement on the stand, or explain what he may be proved to have said elsewhere.   See authorities *supra.*   1 *Starkie Ev.,* 213-14; *State vs. Starr,* 38 *Mo.,* 279.

V.—The counsel for the defendant asked the Court to instruct the jury "that if they found that the defendant killed the deceased while resisting an attempt by deceased to commit any trespass upon the lands and cattle of the defendant, or to do any unlawful act whatever, or after such attempt had failed, and that such killing was unnecessary, they must find the defendant guilty of manslaughter in the second degree."

The counsel for defendant also requested the Court to charge "that according to the laws of this State cattle have a right to run at large from the first day of April to the fifteenth day of October, in each year, and that any assault or trespass with force and violence on such cattle at such time by driving or running, or worrying and beating them in the highway, is an unlawful act."

The counsel for the defendant also requested the Court to charge, "that the driving of one man's cattle, by another out of the highway or along the highway where they have law-

fully a right to be and remain, violently, and with force, is an unlawful act, and if the jury find that the defendant killed the deceased while resisting an attempt by the deceased to do such an unlawful act, and that such killing was unnecessary, they cannot convict the defendant of murder in the first degree, but of manslaughter in the second degree." Each of these requests was refused by the Court, and defendant excepted.

It is claimed that the instructions asked for were proper under *Sec.* 13, *page* 598, *Gen. Stat.*, which reads as follows: " Whoever unnecessarily kills another, except by accident or misfortune, and except in cases mentioned in sub-division two of section five of this chapter, either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt has failed, shall be guilty of manslaughter in the second degree."

The evidence in this case tends to show that here was a killing with an axe—a deadly weapon—by inflicting therewith blows upon the head and neck of the deceased. These blows are claimed to have been inflicted in resistance of a civil trespass upon the land or cattle or both of the defendant; and there is no pretense that the weapon was used without a design to effect the fatal result which followed its use, to wit: the death of Stamford. We are unanimously of opinion that to such a state of facts *Sec.* 13 has no application, and that the instructions before quoted were therefore properly refused. But after a very laborious and protracted examination of the points involved, we are compelled to arrive at this conclusion by courses of reasoning in which we are not unanimous; we therefore forbear to enter upon an explanation of the grounds upon which we base our judgment; it is sufficient for all the practical purposes of this case to announce the result reached. In considering and expounding the law of

homicide we desire to act with extreme caution, and if possible to lay down no position and adopt no line of argument in which we cannot unanimously concur.

VI.—It must be borne in mind that in this construction of *Sec.* 13 we are not considering the case of a killing in heat of passion, upon sudden provocation, or in sudden combat, under *Sec.* 12, to which we now come.

The Court charged the jury " that if they found that the homicide was committed in a heat of passion, upon sudden provocation, or in sudden combat, they must then take into consideration the character of the weapon used by defendant, and if a deadly weapon was used, the provocation given the defendant must have been great indeed to reduce the killing from murder in the first degree to manslaughter in the second degree. It is a question for the jury to find whether in this case there was sufficient provocation to reduce the crime from murder to manslaughter in the second degree." To this the defendant excepted.

What is a sufficient provocation is quite commonly spoken of by writers on criminal jurisprudence, as a question of law, not of fact, a question for the Court, not for the jury. But as Mr. Bishop remarks in 2 *Cr. Law, Sec.* 735, in speaking of the question of what is a sufficient provocation and what is sufficient cooling time, " they are found practically involved in inquiries concerning facts, and as such they must be passed upon by the jury." We are very well satisfied in general with the views expressed on this subject in *Maher vs. The People*, 10 *Mich.*, 212. In that case Mr. Justice Christiancy says: "It is doubtless, in one sense, the province of the Court to define what, in law, will constitute a reasonable or adequate provocation, but not, I think, in ordinary cases to determine whether the provocation proved in the particular case is sufficient or reasonable. This is essentially a question of

fact, and to be decided with reference to the peculiar facts of each particular case. As a general rule, the Court, after informing the jury to what extent the passions must be aroused, and reason obscured, to render the homicide manslaughter, should inform them that the provocation must be one, the *tendency* of which would be to produce such a degree of excitement and disturbance in the minds of ordinary men; and if they should find such provocation from the facts proved, and should further find that it did produce that effect in the particular instance, and that the homicide was the result of such provocation, it would give it the character of manslaughter. Besides the consideration that the question is essentially one of fact, jurors, from the mode of their selection, coming from the various classes and occupations of society, and conversant with the practical affairs of life, are, in my opinion, much better qualified to judge of the sufficiency and tendency of a given provocation, and much more likely to fix, with some degree of accuracy, the standard of what constitutes the average of ordinary human nature, than the Judge whose habits and course of life give him much less experience of the workings of passion in the actual conflicts of life." And again says the same Judge: "The principle involved in the question, and which, I think, clearly deducible from the majority of well considered cases, would seem to suggest as the true general rule—that reason should, at the time of the act, be disturbed or obscured by passion to an extent which *might render* ordinary men, of fair average disposition, *liable* to act rashly, or without due deliberation or reflection, and from passion rather than judgment. To the question what shall be considered in law a reasonable or adequate provocation for such a state of mind, so as to give to a homicide, committed under its influence, the character of manslaughter; on principle, the answer, as a general rule, must be anything,

the natural tendency of which would be to produce such a state of mind in ordinary men, and which the jury are satisfied did produce it in the case before them ; not such a provocation as must, by the laws of the human mind, produce such an effect with the *certainty that physical effects follow from physical causes ;* for then the individual could hardly be held morally accountable. Nor, on the other hand, must the provocation, in every case, be held sufficient or reasonable, because such a state of excitement has followed from it; for then, by habitual and long continued indulgence of evil passions, a bad man might acquire a claim to mitigation, which would not be available to better men, and on account of that very wickedness of heart, which in itself constitutes an aggravation in morals and in law. In determining whether the provocation is sufficient or reasonable, *ordinary human nature*, or the average of men recognized as men of fair average mind and disposition, should be taken as the standard."

We agree substantially with the views thus expressed by the Supreme Court of Michigan. It is the province of the Court to define what will constitute a provocation, by, in substance, informing the jury that it must be something, the natural tendency of which would be to disturb and obscure the reason to an extent which *might render* the average of men of fair average mind and disposition *liable* to act rashly or without due deliberation or reflection, and from passion, rather than judgment, and something which the jury are satisfied did so disturb and obscure the reason of the defendant in the case before them, so that the homicide was the result of the provocation.

The average of men of fair average mind and disposition should be taken as the standard. It is for the jury under instructions of this general nature to determine whether the provocation proved in the particular case on trial is sufficient.

We do not mean to say that it is not proper for a Court to elaborate and illustrate the general instructions above indicated. That is a matter which calls for the exercise of a sound practical discretion, as circumstances may require, for the purpose of bringing the law clearly to the comprehension of the jury.

VII.—So far as the instruction related to a heat of passion upon sudden provocation, it is in accordance with the following views heretofore expressed by this Court in *State vs. Shippey*, 10 *Minn.*, 229-230, to which we adhere. In that case it was said "that to determine on the sufficiency of the provocation to mitigate the killing from murder to manslaughter, the instrument or weapon with which the homicide was effected, must be taken into consideration, for if it was effected with a deadly weapon, the provocation must be great, indeed, to lower the grade of the crime from murder."

And the reason why this is so is, because the presumption from the bare fact of the use of a deadly weapon in perpetrating homicide in heat of passion upon sudden provocation or in sudden combat, is that the killing was intentional, and where the killing is intentional, a great provocation is required to disturb or obscure reason "by passion to an extent which *might render* ordinary men of fair average disposition liable to act rashly or without due deliberation or reflection, or from passion rather than judgment." And so whenever it is sought to bring a case within the terms and meaning of *Section* 12 the provocation must be great to give the homicide the character of manslaughter, because only *intentional* killing is covered by that section which reads in this wise : " The killing of a human being by another, in a heat of passion, upon sudden provocation, or in sudden combat, intentionally, but without premeditation, is manslaughter in the second degree."

VIII.—It is proper further to observe that, as remarked in

*State vs. Brown*, 12 *Minn.*, 543, " 'intentionally, and 'with premeditated design,' do not seem to be used in our statute as synonymous expressions; the latter involving a greater degree of deliberation and forethought than the former." If the intention to kill is formed and executed "*in* the heat of passion, upon sudden provocation, or in sudden combat," we are of opinion that the case falls within the meaning of *Section* 12, where it speaks of a killing " intentionally, but without premeditation." If the intention to kill is formed before the " heat of passion, upon sudden provocation, or in sudden combat," or though formed in the heat of passion is executed after sufficient cooling time, or after the heat of passion has subsided, we are of opinion that the case then comes within the meaning of a killing with a premeditated design to effect the death of the person killed.

So far, then, as the charge of the Court related to a homicide committed in heat of passion, upon sudden provocation, it was correct.

IX.—But the charge comprehended also the case of a homicide committed in sudden combat, and as to this we think it was inaccurate. Where a homicide is committed in heat of passion, in sudden combat, the character of the weapon used is not to be taken into consideration in reference to a provocation, nor in case of such sudden combat is it necessary that there should have been any legal provocation to render the homicide manslaughter. The question of provocation can hardly be said to arise in case of homicide in sudden combat. But the character of the weapon may properly be considered in case of homicide in sudden combat, for the purpose of determining whether the party killing entered upon the combat with a premeditated design to kill; and such intention might be inferred from his *preparing* himself with a deadly weapon previous to the combat, and for the purposes of the combat,

when his adversary was in possession of no deadly weapon, or other means of inflicting great bodily harm upon him. We believe that we have considered all the material points made on the argument. Some questions of fact which were presented it is not necessary to determine in the direction which we give to the case.

For the errors which we have indicated a new trial must be awarded.

Ordered accordingly.